Victor Maurice JORDAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–01002–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 27, 1993.

was completed.

Henry K. Oncken, Maurice Jordan, Houston, for appellant.

John B. Holmes, Calvin Hartmann, Houston, for appellees.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

### OPINION

HEDGES, Justice.

A jury found appellant, Victor Maurice Jordan, guilty of two counts of aggravated robbery. The jury then assessed his punishment, enhanced by one prior felony conviction, at 99–years confinement and fined him $5,000.

Appellant's court-appointed counsel filed a brief stating his opinion that the appeal is

wholly frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), by presenting a professional evaluation of the record and advancing an arguable ground of error on appeal. *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim.App.1969); *see also High v. State*, 573 S.W.2d 807 (Tex.Crim.App.1978); *Jackson v. State*, 485 S.W.2d 553 (Tex.Crim. App.1972).

Appellate counsel delivered a copy of his brief to appellant and advised appellant that he had a right to file a pro se brief. On January 7, 1992, this Court granted appellant's motion to file a pro se brief not later than February 6, 1992. Appellant failed to file his brief by that date.

We conducted an independent review of the record in compliance with *Stafford v. State*, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991), and we do not find any grounds for reversible error. We affirm.

On June 29, 1992, shortly after midnight, Richie Alidon and his date Lynette Kish stopped for gas after seeing a movie. They testified that appellant came up behind Mr. Alidon when he went to the cashier's window to pay for gas. Appellant asked Mr. Alidon repeatedly, "How are you doing?" Appellant then put the gun to the back of Mr. Alidon's head and asked for money. Mr. Alidon gave appellant his wallet. Appellant asked for more money, then hit Mr. Alidon on the back of his head behind the ear, drawing blood. Mr. Alidon testified that he was in fear of imminent bodily injury and death in that he thought appellant would shoot him because he had no money.

After hitting Mr. Alidon again, appellant walked over to Ms. Kish, demanding money. She gave him her wallet. Appellant hit her on the forehead, breaking the skin. She tried to give him her watch. Appellant hit her on the back of the head. The gun discharged, and Ms. Kish fell to the ground.

Houston police officers Mark Myskowski and Brian Bufkin had just stopped at a red light at Fondren and West Belfort when they saw appellant run from a Metro bus stop across Fondren to a gas station. Intent on seeing where appellant had gone, the officers made a U-turn on Fondren to return to the gas station. Shortly after making the U-turn, they heard a gunshot in the vicinity of the gas station.

When they turned into the gas station, they saw appellant pointing a gun at Mr. Alidon. They saw Ms. Kish lying on the ground near the driver's door. The officers radioed for backup, got out of their patrol car, drew their weapons, and walked toward appellant shouting, "Drop your gun." Appellant dropped his gun and stood where he was. When he refused the officers' order to lay down, they physically put him on the ground and handcuffed him. Appellant appeared intoxicated—he smelled of alcohol and his eyes were bloodshot. The weapon, a .32 caliber semi-automatic, was recovered at the scene. A discharged bullet was recovered near the driver's door. The officers also recovered two shell casings, a live round, and a discharged round at the scene.

In his brief, appellate counsel raised a defect in the charge, which read as follows:

You are instructed that each count is to be considered separately from the other count. The law applicable to each of said counts is as follows:

Our law provides that a person commits the offense of robbery if, in the course of committing theft, as that term is hereinafter defined, and with intent to obtain and maintain control of property of another, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

This instruction is defective because the second count in the indictment did not allege "intentionally or knowingly threatens or places another in fear," but alleged that appellant "intentionally and knowingly cause[d] bodily injury to Lynette Kish by striking Lynette Kish with a deadly weapon, namely a firearm, and the Defendant did then and there use and exhibit a deadly weapon, to-wit, a firearm." Trial counsel did not object to the charge.

Article 36.19 of the Texas Code of Criminal Procedure prescribes the manner in which jury charge error is reviewed on appeal. *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

> [T]he judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

TEX.CODE CRIM.P.ANN. art. 36.19 (Vernon 1981).

■ Before reversing a conviction for a jury charge error, the appellate court must first determine whether there was error in the charge, then decide whether sufficient harm was caused to require reversal. *Arline,* 721 S.W.2d at 351. If a proper objection was not made at trial, the error must be so harmful the defendant was denied "a fair and impartial trial." *Id.* In other words, the defendant must have suffered "egregious" harm. *Id.* The extent of harm suffered must be determined in "light of the entire jury charge, the state of the evidence, including contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Arline,* 721 S.W.2d at 351.

■ We find that this error was not harmful. The application paragraph of the charge tracked the indictment and correctly instructed:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 29th day of June, 1992, in Harris County, Texas, the defendant, Victor Maurice Jordan, did then and there unlawfully, while in the course of committing theft of property owned by Lynette Kish, and with intent to obtain or maintain control of the property, intentionally or knowingly cause bodily injury to Lynette Kish by striking Lyneete [sic] Kish

> with a deadly weapon, namely, a firearm, and the defendant did then and there use or exhibit a deadly weapon, to-wit, a firearm, then you will find the defendant guilty of aggravated robbery as charged in count two of the indictment.

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty" in count two of the indictment.

In addition, the charge included a correct definition for "bodily injury": "physical pain, illness, or any impairment of physical condition, including death." TEX.PENAL CODE ANN. § 1.07(a)(7) (Vernon 1974). Lastly, the evidence supported the application paragraph. Ms. Kish testified that appellant hit her forehead with the butt of a gun, breaking the skin, and hit her again on the back of the head with the butt of a gun.

■ We next examined the record to determine whether appellant was afforded effective assistance of trial counsel. During voir dire, several strikes for cause were granted. During the guilt-innocence phase of the trial, counsel cross-examined the State's witnesses to establish "mitigating evidence of intoxication." Trial counsel also cross-examined the officers to establish that they did not see who fired the gun. Although trial counsel did not object to the defect in the charge, the error was harmless in light of the application paragraph proper definition and the evidence supporting it. Isolated failures to object to certain procedural mistakes or improper evidence or argument do not constitute ineffective assistance of counsel. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App. 1984).

■ Trial counsel's closing argument at the guilt-innocence phase was less than fiery:

> Ladies and gentlemen of the jury, at this time I don't intend to take much of your time up, and I'm certainly not going to insult your intelligence. There's been a few inconsistencies, but to be perfectly

honest I don't think those inconsistencies are sufficient enough to give rise enough for me to tell you, well, I think that's sufficient to find this man not guilty. That may be a strange thing to hear from a defense attorney, but things are the way things are, and I have to face facts and I have to face reality. So, I think this is an unusual type of situation, case being tried that puts me in this position.

Certainly in any case, as an attorney, I have a duty to cross-examine, and you have a right to have the benefit of cross examination. I guess it sort of puts you in a box. I represent a defendant who has pled not guilty. But you understand that sometimes there are reasons a person has. If he says nothing more, the State proves your case, even in cases where a defendant may plead guilty before a jury, the jury would still hear the testimony regardless.

I expect that this is a two-part trial. There's a punishment phase, as you've been told about. You will be hearing from me at a later time in this trial.

We find that trial counsel's argument represented a well-reasoned trial strategy rather than an abdication of the adversarial system. *Cf. United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *United States v. Swanson*, 943 F.2d 1070 (9th Cir.1991). It is logical to conclude that trial counsel, faced with overwhelming evidence of appellant's guilt, chose to placate the jurors rather than to possibly antagonize them with an impassioned, though weakly supported, plea for a verdict of not guilty. Counsel clearly anticipated that any success he might garner for appellant would be limited to the punishment phase. He specifically reminded the jurors that they would be hearing from him later in the trial.

■ At the punishment phase, appellant stipulated to four prior offenses. Trial counsel called appellant to testify. He testified that he was 22 years old, had never known his father, had finished high school, had held jobs as a cook and plumber, and had a drug problem that was never ad-

dressed even after he was in trouble with the law. Trial counsel further established that appellant would use his time in the penitentiary to "get his life together" and "get into some kind of drug rehabilitation place." He instructed appellant to "look this jury in the eye" and tell them why they should give him the minimum sentence. In closing, trial counsel asked the jury for a minimum sentence and raised the mitigating factors of appellant's intoxication and family background. The record reflects effective assistance of counsel at the punishment phase. This conclusion is supported by the competence exhibited by trial counsel in the trial as a whole and by the opinion of appellant's counsel on appeal.

We affirm the judgment of the trial court.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. A lawyer does not effectively represent a defendant by telling the jury it should find the defendant guilty.

The majority characterizes defense counsel's closing argument at the guilt-innocence phase as than "less than fiery." That is an understatement. In the closing argument, defense counsel told the jury he thought the appellant was guilty. The majority goes on to find that the argument "represented a well-reasoned trial strategy rather than an abdication of the adversarial system." I disagree. The adversarial process protected by the sixth amendment to the United States Constitution requires that the defendant have counsel who acts as an advocate. *United States v. Cronic*, 466 U.S. 648, 656–57, 104 S.Ct. 2039, 2045–46, 80 L.Ed.2d 657 (1984). The defense counsel did not act as an advocate when he conceded the appellant's guilt.

The concession of guilt by the lawyer in this case is remarkably similar to that in *United States v. Swanson*, 943 F.2d 1070 (9th Cir.1991). In *Swanson*, the defense lawyer said the defendant had a right to stand by his plea of not guilty; that evidence was overwhelming; that the evi-

dence did not raise reasonable doubt; and he did not want to insult the juror's intelligence. *Swanson*, 943 F.2d at 1071.

In the case pending before us, the defense counsel said:

Ladies and gentlemen of the jury, at this time I don't intend to take much of your time up, and I'm certainly not going to insult your intelligence. There's been a few inconsistencies, but to be perfectly honest I don't think those inconsistencies are sufficient enough to give rise enough for me to tell you, well, I think that's sufficient to find this man not guilty. That may be a strange thing to hear from a defense attorney, but things are the way things are, and I have to face facts and I have to face reality. So, I think this is an unusual type of situation, case being tried that puts me in this position.

The defense counsel's argument eliminated the need for the State to prove the appellant was guilty. *Swanson*, 943 F.2d at 1074. The defense counsel's conduct tainted the integrity of the trial. *Id.* In *Cronic*, the Supreme Court said that "if counsel entirely fails to subject the prosecution's case to the meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047 (1984).

A more direct way to refute the majority's statement that defense counsel's argument was not "abdication of the adversarial system" is to recall that the appellant pled not guilty. If the appellant wanted the jury to know that he was guilty, he would have pled guilty. The appellant had a right to a fair trial. He did not get one because his lawyer told the jury to convict him.

The prosecutor in this case, as did the prosecutor in *Swanson*, argues that it was strategy that caused defense counsel to make the argument. Because the prosecutor has not identified any strategy that can justify such argument, we should reject that argument. *Swanson*, 943 F.2d at 1071.

I would hold the appellant did not receive effective assistance of counsel and reverse the trial court's judgment.