Abe HOLLIMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–92–01261–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 21, 1994.

Brian W. Wice, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Abe Holliman, appeals his judgment of conviction for delivery of a controlled substance, namely cocaine, by aggregate weight of less than 28 grams, including adulterants and dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) and 481.-112(a), (b) (Vernon 1992). The jury rejected his plea of not guilty and the court, after finding the two enhancement paragraphs of the indictment to be ·true, assessed punishment at forty-five (45) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We reverse and remand.

Officers Garvey and Torres of the Harris County Sheriff's Department were working undercover in the Galena Park area to locate drug dealers and purchase narcotics from them. On September 25, 1990, the officers noticed appellant standing in front of a residence at the intersection of Bolden and Mid-way. Officer Torres, who was driving, pulled over to the curb and asked appellant if he had a "20," meaning $20 worth of cocaine. Appellant instructed Torres to drive around the block. When the officers returned, appellant reached into the car and handed Torres a white, rock-like substance in exchange for Torres' twenty dollar bill. The substance was later identified as 0.14 grams of cocaine with a purity of 74%.

After purchasing the cocaine, the officers drove away as opposed to arresting appellant, in order to avoid revealing their undercover status. They travelled to the Jacinto City Police Department where they contacted the dispatcher at the Galena Park Police Department. Torres gave the dispatcher a description of appellant and requested that the dispatcher have an officer go to the Bolden–Midway intersection to attempt to identify appellant.

Officer Villarreal of the Galena Park Police Department drove to the Bolden–Midway intersection where he found an individual, appellant, who fit the description he had received. Villarreal obtained identification information from appellant and gave that information to Officers Garvey and Torres. Garvey and Torres then obtained a picture of appellant from the Harris County Identification Department. Appellant was later arrested and charged. At trial, both Garvey and Torres made in-court identifications of appellant.

During trial, appellant's mother, Ebbie Moore, testified on behalf of appellant. She stated that on September 21, 1990, four days prior to the offense, appellant had been severely beaten by a "bunch of guys" who tried to take his belt and shoes. In describing appellant's injuries, Moore stated that his face had been beaten so badly that his left eye was swollen completely shut and protruding, making them fear that he might lose it. Moreover, she testified that appellant's rib cage was purple. She also testified that she did not take appellant to the hospital to treat these injuries.

In addition, Moore testified that she has burglar bars on all the windows and doors of her house. She stated that on September 25,

1990, the date of the offense, she locked the door before she left for work at 7:35 a.m. Since appellant did not have a key to the house, Moore testified that he could not have been outside the house on the date and time of the offense. The trial court denied appellant's request for a jury charge on the defensive theory of alibi.

Appellant asserts four points of error. First, the trial court erred in denying appellant's request for a jury instruction on the defensive theory of alibi after the evidence fairly raised the issue. Second and third, the trial court erred in overruling appellant's objections to the prosecutor's arguments outside the record. Fourth, the trial court erred in overruling appellant's objection to the prosecutor's comment on appellant's failure to testify.

■ In his first point of error, appellant complains that the jury should have been instructed on the defensive theory of alibi. However, the Texas Court of Criminal Appeals has held that, if the alleged defensive theory merely negates an element of the offense, then no affirmative charge must be given. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App.1986) (and cases cited therein). In an earlier case, the Court of Criminal Appeals discussed the alibi defense:

> The literal meaning of "alibi" is "elsewhere." As used in criminal law the term indicates a line of proof by which the defendant attempts to show that he could not have committed the crime of which he is accused because he was elsewhere at the time. In asserting alibi, the defendant simply denies the possibility of having committed the crime, whereas all statutory affirmative defenses generally apply to justify his admitted participation in the act itself. The general rule is that the defendant does not have the burden of proving his alibi, the rationale being that *alibi evidence tends to disprove one essential factor in the prosecution's case—namely the presence of the accused at the place and time of the alleged crime.*

*Miller v. State*, 660 S.W.2d 95, 96 (Tex.Crim. App.1983) (emphasis added) (citations omitted).

■ Therefore, since alibi is one of those defensive theories that merely negates an element of the offense, *id.*, no affirmative charge must be given. *Sanders*, 707 S.W.2d at 81; *see also Villarreal v. State*, 821 S.W.2d 682, 684–86 (Tex.App.—San Antonio 1991, no pet.). Although the broad language in *Sanders*—that all defenses include confession and avoidance—has been disavowed, *Willis v. State*, 790 S.W.2d 307, 314 (Tex.Crim.App. 1990), it is established that where the non-penal code defensive theory merely negates an essential element of the State's case, as opposed to justifying or excusing the culpable conduct, the denial of a jury instruction thereon is not error. *Villarreal*, 821 S.W.2d at 685–86; *see also Segura v. State*, 850 S.W.2d 681, 687 (Tex.App.—Corpus Christi 1993, pet. ref'd); *Colson v. State*, 848 S.W.2d 328, 332 (Tex.App.—Amarillo 1993, pet. ref'd); *Mills v. State*, 802 S.W.2d 400, 405 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd); *Drapkin v. State*, 781 S.W.2d 710, 712 (Tex.App.—Texarkana 1989, pet. ref'd). Appellant's first point of error is overruled.

■ In his second and third points of error, appellant contends that the trial court erred in overruling his objections to statements made by the prosecutor during final argument. Specifically, appellant complains of the following statements concerning Moore's testimony that appellant had been beaten in an attempt to rob him:

> I would submit to you that if Mr. Holliman got attacked by a series of attackers and he was allegedly robbed, why in the world would the police not have been called or a complaint have been made? Why? What could it have been folks? You ask yourselves why. I can tell you why. *There was probably two or three people arguing over drugs and that's why he didn't want to call the police and make a report.*

(Emphasis added). Appellant's objection that the argument was outside the record was overruled by the court.

■ Appellant also complains of the prosecutor's statements regarding Moore's testimony that she had not given appellant a key to their home:

> [B]ut he's lived with her for 40 years, she would have you believe that he's never had

a key or that if he had a key, he had it when he was real young. Doesn't that leave a question in your mind? Why doesn't he have a key now and he's an adult? *Afraid of him ripping her off to go and buy his crack?* Did that ever enter your mind? Doesn't make sense otherwise.

(Emphasis added). Appellant's objection that the argument was outside the record and that there was no inferring evidence was overruled.

■ In order for jury argument to be proper, it must fall into one of the following categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; and (4) pleas for law enforcement. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim.App.1990). The prosecutor cannot use closing argument to get evidence before the jury which is outside the record and prejudicial to the accused. *Everett v. State*, 707 S.W.2d 638, 641 (Tex.Crim.App.1986).

The State defends the first argument based on Moore's cross-examination testimony. The prosecutor asked Moore if the fight may have been over drugs, and she responded, "I seriously doubt it." According to the State, her answer indicated that such a scenario was possible, thus, the prosecutor's argument was either a reasonable deduction from that evidence or a summation of the evidence. We disagree. Moore's testimony in no way provided any evidence that appellant was beaten up because of an argument over drugs. On the contrary, she specifically testified that appellant was beaten up in an attempt to rob him of his belt and shoes. We hold that the first argument on the part of the prosecutor was improper because it injected unsworn harmful facts that were outside the record.

As to the second argument, the State contends that since Moore's assertion that appellant did not have a key to the house was incredible, it was reasonable for the prosecutor to inquire as to the true motivation compelling Moore to lock her son inside her home. It may well have been proper for the prosecutor to put Moore's motivation in a questionable light, but it was not proper for her to fabricate her own explanation by injecting facts not in evidence. We hold that the second argument is improper as well.

■ The Texas Court of Criminal Appeals has held that the TEX.R.APP.P. 81(b)(2) harm analysis applies to improper jury argument. *Orona v. State*, 791 S.W.2d 125, 129–30 (Tex. Crim.App.1990); *Griffin v. State*, 779 S.W.2d 431, 433 (Tex.Crim.App.1989). When conducting a harm analysis, the court should consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) its probable collateral implications; (5) how much weight a juror would probably place upon the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989).

■ In this case, the error was the trial court's overruling of appellant's objection to the prosecutor's inflammatory jury argument. The implications include the jury viewing appellant as someone who would not only subject himself to a severe beating, but would rip off his own mother to support his drug habit. Moreover, by overruling appellant's objection to the improper argument, the trial court put "the stamp of judicial approval" on the argument, thus magnifying the potential harm. *Good v. State*, 723 S.W.2d 734, 738 (Tex.Crim.App.1986).

In *Orona*, the Court of Criminal Appeals discussed the importance of the emphasis the State placed on the argument. *Orona*, 791 S.W.2d at 130. In that case, the State made only a passing remark and abandoned the argument after the court overruled the defense objection. The court explained that since the comment was in passing and not reinforced or emphasized by the State, the probable impact on the jury was minimal, if any. *Id.* However, the court specifically stated that "[i]f the State had sought to advance its argument after the objection, then the opposite result might be necessary." *Id.*

In the present case, after the court overruled appellant's objections, the prosecutor continued to advance and emphasize the

same prejudicial arguments. After the objection to the first argument concerning the attack on appellant was overruled, the prosecutor went on to say:

> Isn't that possible? It's possible. My common sense is that that's probably why the police weren't called and that he didn't go to the hospital emergency room where probably a doctor or nurse would have called the police to respond and make a report. *I would submit to you that it was probably over drugs.*

After the objection to second argument involving Moore's refusal to give her son a key to their home was overruled, the State continued:

> Think about it. She would have you believe that in this two months to recuperate that he was locked in the whole time. Isn't that strange? The burglar bars all over the place including the front and back door. Pretty weird. What in the world is she trying to keep in, or what in the world is she trying to keep out, if that's the case?

Since the prosecutor repeatedly emphasized these improper arguments, it is likely that the jury placed substantial weight on them in their deliberations. Finally, if we hold that this type of inflammatory jury argument is harmless error, it is most certain that the State would repeat it with impunity. In fact, the four categories of proper jury argument were originally set out in *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App. 1973) as a warning signal to prosecutors because of the "alarming number of improper jury arguments" the court was called on to consider. *Id.* at 231. We cannot conclude beyond a reasonable doubt that the prosecutor's improper argument made no contribution to the conviction or to the punishment in this case. *See* Rule 81(b)(2). Thus, we sustain appellant's second and third points of error.

In his fourth point of error, appellant asserts that the prosecutor commented on appellant's failure to testify by stating the following in her closing argument:

> Now, the Defense attorney asked Officer Torres, "do you know Fred Walker and what's his description?" "Doesn't he live at that crack house that the Defendant was standing in front of?" And Officer Torres says, "yes, I do know who he is." He told you, more importantly, that Fred Walker is a 25–year–old man. This man was 47 at the time this offense occurred. Let me ask you this: *How in the world is [the defense attorney] going to know who Fred Walker is or the resident of this crack house unless the Defendant told him?*

(Emphasis added).

The prosecutor stated, in essence, that defense counsel must have learned the identity of Fred Walker from his client, appellant. For indirect comments to constitute reversible error, they must call for a denial of an assertion of fact or contradictory evidence that only the accused is in a position to offer. *Owen v. State,* 656 S.W.2d 458, 459 (Tex.Crim.App.1983). In this case, appellant is not necessarily the only person who could have told his attorney about Fred Walker. The attorney could have discovered the information through his own investigations, through interviewing witnesses, or from a hired investigator. Appellant's fourth point of error is overruled.

Accordingly, the judgment of the trial court is reversed and remanded.