**Thomas M. GIESBERG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–95–00687–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 12, 1996.

Opinion Supplementing Decision on
Rehearing April 24, 1997.

---

Brian Wice, Houston, for Appellant.

Keli Jane Roper, Houston, for Appellee.

Before SCHNEIDER, C.J., and WILSON and HEDGES, JJ.

## OPINION

HEDGES, Justice.

A jury convicted appellant of the murder of Ramon Montes and assessed his punishment at 65 years in prison. In 13 points of error, appellant challenges the legal and factual sufficiency of the evidence supporting his conviction (points one and two), and assigns error concerning the jury charge (points three through five), the admission and exclusion of evidence (points 12 and 13) and the prosecutor's closing argument (points eight and nine), and various other rulings below (points six, seven, 10, and 11). We affirm.

### Facts

In the summer of 1990, appellant was a Rice University graduate student working part-time as a messenger/deliveryman. His sister, Margaret Giesberg, was married to Ramon Montes, who had recently beaten her so severely that she required stitches. Appellant was reported to have been very angry about Montes's abuse of his sister. On July 12, 1990, appellant was seen on the balcony of Montes's apartment standing over Montes. Montes was burned and had been stabbed in the abdomen. He died in the hospital that evening. Appellant and several friends testified that he had been drinking at Valhalla, the Rice graduate student bar, that evening.

### Legal Sufficiency

In point of error one, appellant contends that the evidence is legally insufficient to sustain his conviction for murder. We review the evidence in the light most favorable to the verdict, to determine whether any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Appellant argues that even when viewed in the light most favorable to the

verdict, the evidence shows only, at most, that he was present at Montes's apartment that day, that he was perhaps the last person to see Montes alive, and that he fled from the scene when the authorities arrived.

In the light most favorable to the verdict, the evidence shows the following. In the late afternoon on Thursday, July 12, 1990, Martha Laredo was in her home, the ground floor unit of a duplex, watching television with her children. From upstairs, she heard the sound of someone running. Then she heard a voice calling, "Help, help, help!" At about the same time, Edna May Giebler came from next door to alert Laredo that there was a fire in the upstairs apartment. Once outside, Laredo went around the back of the building, where she saw appellant and Montes on the top landing of the exterior stairs leading to the upstairs apartment. Montes was on his knees; he was blackened, and his long hair was burnt. Appellant had hold of Montes under the arms and appeared to be either pulling him back inside or holding him down. Appellant was dirty and blackened. He had blood on his hands and soot on his person. Laredo had returned to the front of the building to see if help was on the way when she heard the fire trucks approaching. She then saw appellant pass by her—first walking, then picking up speed and running away down the street.

Giebler also saw the man on the back landing. She said he was dragging Montes out of the building. At trial, she could not identify appellant as the man she saw. Patsy Hall had been next door with Giebler when they had noticed the fire. She saw what Giebler saw, but, unlike Giebler, she was able to identify appellant. Only Giebler saw that Montes had several knife wounds, that his intestines appeared to be exposed, and that the other man had blood stains on his upper thigh.

Montes and Margaret Giesberg had been married to each other for six months when he died. She testified that about one week before he was killed, Montes had assaulted her, inflicting injuries that required stitches to her face. She also said that appellant knew about that incident, and was very upset and angry about it.

Appellant asserts that the evidence shows nothing more than that he was a mere bystander who happened to be present and who ran off after abortively intervening. We disagree. When viewed in the light most favorable to the verdict, the evidence shows that appellant had a motive to kill Montes, and that, acting on that motive, he deliberately killed Montes and then fled from the scene.

We overrule point of error one.

In point of error two, appellant contends that the evidence was factually insufficient to sustain his conviction for murder. After a court of appeals has determined that the evidence is legally sufficient under the *Jackson* standard, it has jurisdiction to proceed to review factual sufficiency of the evidence, if the issue is properly raised. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). In reviewing the factual sufficiency of the evidence in a criminal case, we examine all of the evidence, without looking at it in the light most favorable to the verdict, to determine whether the jury's verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd untimely filed).

Appellant directs our attention to the following evidence in support of this point:

1. Edna Giebler, Jesse Hall, and Patsy Hall all testified that Montes told them that *"They* came to kill me."

2. Jesse Hall and Patsy Hall testified that appellant did not run from the scene but instead walked "casually" and "slowly."

3. Appellant's fingerprints were not on any items at the scene, including the knife and the fire extinguisher.

4. Margaret Giesberg testified that she could not detect any cuts or wounds on appellant and that he did not smell of smoke on the night Montes was killed.

5. Both Jesse Hall and Patsy Hall were unable to identify appellant at a line-up two years after the night Montes was killed.

When we consider this evidence along with the evidence set forth in connection with

point of error one above, the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

We overrule point of error two.

In point of error three, appellant asserts that the trial court committed reversible error in denying his request for a jury instruction "on the defensive issue of alibi after the evidence fairly raised the issue."

■ The accused is entitled to a jury instruction on every defensive theory raised by the evidence, whether the evidence is strong or weak, unimpeached or contradicted. *Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim. App.1991); *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987). Alibi evidence merely negates an element of the offense. *Holliman v. State*, 879 S.W.2d 85, 87 (Tex. App.—Houston [14th Dist.] 1994, no pet.); *see also Miller v. State*, 660 S.W.2d 95, 96 (Tex.Crim.App.1983) (cited in *Holliman* ) (alibi evidence tends to disprove presence of accused at place and time of the crime, an "essential factor in the prosecution's case"). Therefore, no instruction on alibi need be given. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App.1986); *Bynum v. State*, 874 S.W.2d 903, 907 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

We overrule point of error three.

In point of error four, appellant asserts that the trial court reversibly erred by charging the jury that it could consider evidence of flight as evidence of guilt, over appellant's objection that the charge constituted a comment on the weight of the evidence.

The court charged the jury,

The mere presence of the defendant, if he was present, at the scene of the crime is not sufficient to conclude that the defendant committed the offense beyond a reasonable doubt. You are further instructed that evidence of a defendant's flight, if any, to avoid arrest and prosecution may be considered by you as some evidence of the defendant's guilt only if you believe that evidence beyond a reasonable doubt.

Article 36.14 of the Code of Criminal Procedure requires that the trial court deliver to the jury a written charge "not expressing any opinion as to the weight of the evidence, not summing up the testimony [or] discussing the facts." TEX. CODE CRIM. P. ANN. art. 36.14 (Vernon 1981 and Supp. 1996). It is improper for the trial court to single out certain testimony in such a way as to direct undue attention to it. *Hawkins v. State*, 656 S.W.2d 70, 73 (Tex.Crim.App. 1983).

Here, the instruction impermissibly singled out evidence of flight in such a way that the jury could have given it heightened consideration. Therefore, the trial court erred in so instructing the jury.

Having found that the instruction was erroneous, we now consider whether the error was harmful. The conviction must be reversed if we conclude that appellant has suffered "no more than some harm." *Courtney v. State*, 908 S.W.2d 48, 53 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). We weigh the degree of harm in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel, and any other relevant information in the record. *Jordan v. State*, 859 S.W.2d 418, 421 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

On this record, we believe that the error was harmless. As we discussed under points of error one and two, the evidence clearly supported conviction. Two witnesses identified appellant at the scene of the crime, blackened and bloody, pushing or holding down Montes. Both saw him leave the scene running when the fire truck was heard approaching. Appellant had a strong motive for attacking Montes: the assault of his sister. The rest of the jury charge is errorless. These factors in combination compel a finding of harmless error.

We overrule point of error four.

In point of error five, appellant asserts that the trial court committed reversible error in denying his requested jury instruction that "presence in the vicinity of a crime and flight are not alone sufficient to conclude beyond a reasonable doubt that the accused committed the offense."

Appellant's requested instruction was a correct statement of the holding in *King v. State,* 638 S.W.2d 903, 904 (Tex.Crim.App. 1982). The instruction the trial court did give, however, was not inconsistent with *King v. State,* and was also a substantially correct statement of the law. *See Johnson v. State,* 673 S.W.2d 190, 196–97 (Tex.Crim.App. 1984) ("[m]ere presence at the scene of the crime alone is not sufficient to conclude that the accused committed the offense beyond a reasonable doubt"); *Foster v. State,* 779 S.W.2d 845, 859 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990) ("[e]vidence of flight is admissible as a circumstance from which an inference of guilt may be drawn"). Appellant has not shown any reversible error.

Point of error five is overruled.

■ In point of error six, appellant contends that the trial court committed reversible error in responding to a jury note with a response that impermissibly exceeded the scope of the jury's inquiry, in violation of TEX. CODE CRIM. P. ANN. art. 36.28 (Vernon 1981).

After the jury retired to deliberate, it sent out a note stating, "We would like to hear the defendants identifications [sic] testimony from both Pat Hall & Mrs. Laredo. Specifically, *not* the line up testimony, rather the on-scene identification testimony." In response to that note, some portion of the testimony was read back to the jury by the court reporter; the record does not, however, show the *content* of that portion. Nor does the record show that appellant's trial counsel objected, *before* the testimony was read back, and made the court aware of his contention that the readback should end at a specified point. It is the appellant's burden to present a record sufficient to show error requiring reversal. TEX. R. APP. P. 50(d). Appellant here has failed to do so in connection with point of error six. Nothing is presented for review.

We overrule point of error six.

■ In point of error seven, appellant contends that the trial court committed reversible error in denying his motion to suppress an impermissibly suggestive photographic line-up array. Appellant contends that the photographic array was impermissibly suggestive in four respects: (a) of the six men in the array, only appellant and one other man had blonde hair; (b) only appellant had a mustache; (c) only appellant did not have a jail-issue wrist band; and (d) only appellant and one other man in the array appeared to be photographed against a dark background.

In support of his first assertion, appellant cites us to the cross-examination of officer Mayer, who had selected the photos in the array; the officer was asked, "It looks like only number two and number six in this photo ID have blonde hair, doesn't it?" and he responded, "Not to me. He has blondish colored hair. His is a sandy-blonde. His was a very light brown and this is sandy blonde here; and most of the people said that it was a sandy blonde, two blonde-headed suspects." This testimony does not support the proposition that the photographic array was impermissibly suggestive.

To support his second assertion, appellant relies exclusively on the following question and answer:

Q: Of number two and six, who has the lightest blonde hair? Only number two has a mustache; is that correct?

A: That's correct.

This exchange is ambiguous. The second question may reasonably be construed, in context, to mean, "Of number two and six, only number two has a mustache; is that correct?" Under that interpretation, this exchange does not address whether any of the other four men had a mustache. Moreover, that interpretation is consistent with appellant's trial counsel's unsworn representation to the trial court, in closing argument on the motion to suppress, that the men in photos numbers one, two, three, and five each had a mustache and the other two men did not. This testimony does not establish that the photographic array was impermissibly suggestive.

Turning to appellant's third assertion, the record shows that appellant was the only one in the line-up not wearing a jail-issue wrist band. Appellant's trial counsel made unsworn representations to the trial court, how-

ever, to the effect that the district attorney's investigator had asked the other men in the lineup with appellant to cover their wristbands with their hands. Trial counsel acknowledged that in the photos, "[t]hey do have their hands over the plastic tag, but on a couple of them you can still see their tags when they turn their back away from you." The photos themselves are not in the record. So far as this description reveals, the tags were largely concealed, unobtrusive, and not impermissibly suggestive.

Finally, the record shows that appellant and one other man in the array appeared to be photographed against a dark background; the record does not, however, support appellant's assertion that the others were not *also* photographed against a dark background. On this record, the differences in photographic background did not cause the array to be impermissibly suggestive.

We overrule point of error seven.

■ In point of error eight, appellant contends that the trial court committed reversible error in overruling appellant's objection that the prosecutor improperly bolstered the credibility of officer Mayer during her closing argument at the guilt phase. In point of error nine, appellant raises a similar contention concerning improper bolstering of Laredo's and Hall's credibility.

Both points relate to the following exchange:

[Prosecutor:] As far as sergeant Mayer checking out or not checking out these deliveries, defense counsel assumes that who sergeant Mayer talked to at that company was the man that came and testified today. We don't know who he talked to, and if you think that sergeant Mayer is going to get up here and put his career on the line by lying about something that insignificant—

[Defense:] Your honor, I am going to object to improper bolstering.

[Court:] Overruled. Continue.

[Prosecutor:] Let's look first, mere presence, because I think the evidence shows that Thomas Giesberg was at the scene that night. You people are intelligent. You have lived. You know people. You

can tell when someone is lying. You cannot tell me that Martha Laredo and Patsy Hall are lying.

[Defense:] Your honor, that's improper bolstering.

[Court:] Overruled.

Appellant contends this case is indistinguishable from *Menefee v. State*, 614 S.W.2d 167, 168 (Tex.Crim.App.1981), in which the prosecutor commented, "I don't believe I have ever seen anybody that I thought was any more honest than [the complainant] is," and *Brown v. State*, 165 Tex.Crim. 535, 309 S.W.2d 452, 453 (App.1958), in which the prosecutor commented, "These officers are the most … truthful men in the enforcement of the law." We disagree. In *Menefee* and *Brown*, the prosecutor expressed a personal opinion that the respective witnesses were extremely credible. In this case, the prosecutor argued instead that the jurors' own reasoning powers should tell them, from the evidence, that Mayer, Laredo, and Hall were worthy of belief. The argument was not improper bolstering. Rather, we hold that the argument was proper because it was within the bounds set out in *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973), which states that argument is proper if it is based on the evidence and inferences from the evidence.

We overrule points of error eight and nine.

■ In point of error 10, appellant contends that the trial court committed reversible error in denying his motion for mistrial when the prosecutor injected her personal opinion during final argument in the guilt stage of trial.

During her closing, the prosecutor argued:

I know you look at this defendant and you think "how could this person do this? Look at how clean cut he is. He's a Rice graduate student. How can you tell me he did something like this?

Everyone has the capacity to murder, everyone, no matter how gentle they seem or dependable they seem, everyone has it within them to murder.

The trial court sustained defense counsel's objection that the statement constituted an

improper prosecutorial opinion; instructed the jury to disregard it; and denied appellant's ensuing motion for mistrial.

Appellant asserts that the instruction was inadequate to cure the improper prejudice the argument created, because the argument injected new facts harmful to him which were outside the record. We disagree. Appellant's trial counsel had already argued, during his own closing, that, "That's not even Thomas's character to do this [commit murder]. He's a studious person and a law-abiding person." The prosecutor's argument was not phrased as a personal opinion, but rather, was a proper response to that defense argument. The argument did not inject new facts; instead, it constituted a plea to the jurors to remain open to the possibility that even a previously law-abiding person can and will commit murder if the circumstances are sufficiently extreme. We hold that the able trial judge did not err in denying the motion for mistrial because the instruction cured the error, if any.

We overrule point of error 10.

■ In point of error 11, appellant contends that the trial court committed reversible error in sustaining the State's challenge to veniremember Mannke for cause.

At the conclusion of voir dire, the following exchange with Mannke occurred at the bench:

[Court:] I believe you indicated that you wanted to approach the bench on some matter.

[Mannke:] Yes. Yesterday you had mentioned if we knew anyone that had been in federal prison anywhere and someone close to me, has a similar to this background [sic]. This is an emotional thing for me. I did know somebody, and I think it would affect me emotionally as far as making a correct judgment as far as the character.

[Court:] You would not be able to fairly hear and decide this case?

[Mannke:] Appearance wise, looking at this gentleman, he seems real educated and from an affluent background. That was my friend, too; and I don't agree upon the punishment given to this person and I don't feel like I could give a fair judgment and it's been a year now and I want to forget the whole thing and I think that I would not be a good juror.

[Prosecutor:] The State moves [to strike] for cause on her.

[Court:] Sustained. Counsel, make your strikes, please.

[Defense:] We would ask for three additional peremptory challenges, Judge.

[Court:] The request for additional challenge would be denied.

[Defense:] We would ask that based upon the strikes [sic] of 48, we object. We would object to the State's motion to strike that person for cause isn't appropriate under the statute. There is no basis to the State.

[Court:] The court would make the observation that she was approaching tears as she stood before me and was unstable.

A trial court possesses the discretion to strike a venireperson who is not fit to serve on the jury. *Mason v. State*, 905 S.W.2d 570, 577 (Tex.Crim.App.1995). A venireperson who cannot hear and decide a case fairly is not fit to serve. *See Clark v. State*, 717 S.W.2d 910, 917 (Tex.Crim.App.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987) (prospective juror shown to be biased against the law, as a matter of law, must be excused when challenged, even if he states he can be fair and impartial). Here, the trial court heard Mannke's own assessment that she could not "give a fair judgment" and had the opportunity to observe her demeanor and evaluate her credibility. Appellant's observations that Mannke "never stated unequivocally that she could not be a fair and impartial juror," and that she was never asked whether she could set aside her feelings and act in accordance with the oath and with the trial court's instructions, even if accurate, do not demonstrate that the trial court abused its discretion in crediting Mannke's self-assessment of her suitability for jury service in this case.

We overrule point of error 11.

■ In point of error 12, appellant contends that the trial court committed revers-

ible error in excluding testimony concerning Montes's reputation for thievery and gang activity.

The subject of point of error 12 is Margaret Giesberg's testimony, on appellant's bill of exceptions, that Montes was involved in stealing things from cars with his friends, and that that predilection "was fairly well known among his friends." Appellant has not directed our attention to any portion of the record that shows that the trial court excluded this testimony; and even if the fact that it was presented in a bill of exceptions, standing alone, were sufficient to show that the trial court made such a ruling, it does not suffice, of itself, to show the nature of the objection that evoked that ruling. Appellant has not shown that this complaint was preserved for appellate review in accordance with Tex. R. App. P. 52(a), and accordingly, has not met his burden, under Tex. R. App. P. 50(d), to present a record sufficient to show error requiring reversal in connection with the exclusion of Margaret Giesberg's testimony.

We overrule point of error 12.

■ In point of error 13, appellant contends that the trial court reversibly erred in excluding testimony that Montes's tattoos reflected his membership in a gang.

Appellant's trial counsel anticipated that the medical examiner would testify that Montes had a cross tattooed on his hand, between the thumb and finger, and a swastika tattooed on one or both arms. Accordingly, he sought to question officer Mayer about whether either or both of those tattoos signified that Montes was a member of a gang. Appellant has not, however, directed our attention to any portion of the bill of exceptions that shows that officer Mayer would have testified that either or both of Montes's tattoos signified that Montes was a member of a gang. Therefore, appellant has not met his burden, under Tex. R. App. P. 50(d), to present a record sufficient to show error requiring reversal in connection with the exclusion of Mayer's testimony.

We overrule point of error 13.

We affirm the judgment.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

On motion for rehearing, appellant contends that we applied the wrong standard of review in assessing whether the trial court's error in instructing the jury on the implications of flight (point of error four) required reversal. We grant the motion, reconsider appellant's point of error four, and issue this supplemental opinion. Tex.R.App.P. 100(c). We agree that our opinion suggests that we used the wrong standard of review.[1] We do not agree, however, that a review under the correct standard requires reversal.

■ Appellant argues that we should analyze the harm of the trial court's charge error under the standards set forth in Texas Rule of Appellate Procedure 81(b)(2), *Harris v. State,* and *Almanza v. State.* Tex.R.App.P. 81(b)(2); *Harris,* 790 S.W.2d 568 (Tex.Crim. App.1989); *Almanza,* 686 S.W.2d 157 (Tex. Crim.App.1984). Appellant is correct that the trial court's charge error should be analyzed under the *Almanza* standard. Rule 81(b)(2) and *Harris,* however, are inappropriate standards in this case.[2]

Rule 81(b)(2) is essentially the codification of the United States Supreme Court's harmless-error standard for constitutional error. *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex. Crim.App.1994); *see Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). The Court of Criminal Appeals has held that rule 81(b)(2) applies to (1) trial errors resulting from the denial of

---

1. In our original opinion, we stated, "On this record, we believe that the error was harmless. As we discussed under points of error one and two, the evidence clearly supported conviction." 945 S.W.2d at 124. This language suggests that we utilized the discredited "overwhelming evidence of guilt" test to determine whether the trial court's comment on the weight of the evidence was harmful error.

2. We recognize that a harm analysis under *Almanza* is inappropriate when a statute requires the trial court to put particular language in the charge and the defendant challenges the constitutionality of that statute. *Rose v. State,* 752 S.W.2d 529, 537 n. 9 (Tex.Crim.App.1987).

state or federal constitutional rights and (2) all other trial errors except those for which another rule or statute provides a different analysis. *Abdnor,* 871 S.W.2d at 732. Because Code of Criminal Procedure article 36.19 provides for a harmless-error analysis for charge error, we do not apply rule 81(b)(2) in this case. TEX.CODE CRIM.P.ANN. art. 36.19 (Vernon 1981). Furthermore, *Harris v. State* applies only to those cases in which a rule 81(b)(2) harmless-error analysis is conducted. *Harris,* 790 S.W.2d 568.

Article 36.19 states:

Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

TEX.CODE CRIM.P.ANN. art. 36.19 (Vernon 1981). The Court of Criminal Appeals' major interpretations of article 36.19 are found in *Arline v. State* and *Almanza v. State. Arline,* 721 S.W.2d 348 (Tex.Crim.App.1986); *Almanza,* 686 S.W.2d 157. In *Almanza,* the Court of Criminal Appeals observed that if the trial court's charge error was subject to a timely objection at trial, "then reversal is required if the error is 'calculated to injure the rights of the defendant' which means no more that that there must be *some* harm to the accused from the error." *Almanza,* 686 S.W.2d at 171. Essentially, this pronouncement means that under the "some harm" analysis, "[a]n error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Id.*

In *Arline,* the Court of Criminal Appeals explained the "some harm" analysis in *Almanza.* The Court said that the defendant must have suffered " 'some' actual, rather than theoretical, harm from the error." *Arline,* 721 S.W.2d at 351. "[T]he presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction.

Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Id.* We determine the actual degree of harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171. Unlike rule 81(b)(2), however, article 36.19 places the burden on the defendant to show from the record that the complained-of error actually harmed the defendant. *Atkinson v. State,* 923 S.W.2d 21, 26 (Tex.Crim. App.1996).

 In his original appellate brief, appellant points to two specific instances in the record allegedly demonstrating that the trial court's charge error actually caused him "some harm." Appellant complains that the following portion of the State's closing argument meets that burden:

[THE STATE:] Do you think it's a coincidence that just another white man who was dirty looking who was running down the street at that particular time. This is the same man. It's the defendant, but he was running with his head down so Horowitz couldn't see his face. He is not going to get up here and say, "Yeah, well, that might be him."

He's not going to say that. He is just going to say, "I saw a white man running."

We're getting mere presence, covered with blood and soot, running from the scene, that you can consider as evidence of guilt.

[Appellant] left work early. You heard Sergeant Mayer testify. Steve Brooks told him that. [Appellant] was late to meet his friend that night, an hour late. [Appellant] lied about where he was that night. He told his sister he was with Margaret Summers, his girlfriend. If you are innocent, why do you lie? Covered with blood, ran from the scene, left work early, late for Valhalla [a bar], and lying gets us way down [to proving the case beyond a reasonable doubt].... Are those the actions of an innocent man?

Because this particular argument was entirely proper, it could not have harmed appellant. The State did indeed contend that appellant's flight was evidence of his guilt. But a mere reference to appellant's flight, unassociated with the erroneous charge, is not itself error. The State was permitted to argue logical inferences arising from admissible evidence. This argument was based on admissible evidence, not on the court's charge, and therefore was not objectionable.

█ We are left with only one credible claim of "some harm," which appellant contends arises from the State's sole reference to the erroneous instruction during closing argument:

[THE STATE:] There are two things that weren't, though, that we didn't talk about. One is the mere presence of the defendant at the scene of a crime is not sufficient to conclude that he's guilty. Well, that makes sense. If you are standing next to someone when a person shoots another person, doesn't mean you did anything. Witnesses are merely people who are merely present at the scene of a crime. Also, *you have been instructed that evidence of a defendant's flight from a scene, running away, may be considered by you as some evidence of his guilt.* So, those are just two things we hadn't talked about before and I wanted to go over with you.

(Emphasis added.)

In our harm analysis, *Almanza* requires us to determine the actual degree of harm in light of (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

We now proceed to evaluate harm in light of the entire jury charge. Initially, we note that the State made only one de minimus reference to the instruction on flight. We do not believe that this single, unadorned reference was sufficiently significant to amount to some actual harm. Appellant rummages far afield to identify harm arising from the charge in its entirety. He even attempts to corrupt the charge with omitted material.

At trial, appellant requested, and the trial court refused, an instruction on alibi. In our original opinion, we determined under point of error three that the trial court's ruling was proper. Appellant now contends that our determination was erroneous and that the error compounded the harm engendered by the State's closing argument. He criticizes our reliance on *Holliman v. State*, 879 S.W.2d 85 (Tex.App.—Houston [14th Dist.] 1994, no pet.), in support of our holding, arguing that (1) *Holliman's* discussion of alibi instructions was dicta and (2) we are not bound by a decision of the Fourteenth Court of Appeals. He concludes that our disposition of point of error three has a "virtual lack of a legal leg to stand on" and is "wide of the mark." Although we acknowledge, of course, that we are not bound by *Holliman*, we stand by our previous disposition of point of error three. Accordingly, we fail to perceive harm in a proper exclusion of a superfluous instruction.

█ In conducting our review under the second *Almanza* factor, we consider the state of the evidence, including the contested issues and weight of probative evidence. Appellant makes a general claim, with no reference to the record, that the trial court's charge error actually caused him "some harm" because it denigrated his defense of alibi and misidentification. This argument is logically deficient. Appellant's defense was that he was not at the scene *at all*, not that he was at the murder scene trying to assist his wounded brother-in-law. The erroneous charge instruction on flight could not have affected appellant's defense because the jurors would weigh the significance of his alleged flight only if they disbelieved his defense that he was not present at the murder scene. If appellant's defense had been that he was present at the murder scene, but he did not commit the murder, then the State's reference to the erroneous instruction would clearly have constituted "some harm." Instead, appellant decided to try his case on a different defensive theory—his lack of presence at the murder scene—under which the erroneous charge did not affect the contested issues and weight of probative evidence.

We, therefore, conclude there has been no harm under the second *Almanza* factor.

Reviewing the third *Almanza* factor, we consider the State's actual argument: "Also, you have been instructed that evidence of a defendant's flight from a scene, running away, may be considered by you as some evidence of his guilt." This is the only portion of the record to which appellant directs us where the State makes an explicit reference to the erroneous flight instruction. This brief reference to the erroneous charge instruction does not elaborate on or discuss the instruction. It is no more than a reiteration of what the trial court has already read to the jury. We hold the State's passing reference to the flight instruction did not aggravate the charge error in any material sense.

The final *Almanza* factor requires us to determine the actual degree of harm in light of any other relevant information revealed by the record of the trial as a whole. As we previously discussed, appellant did not present a defense that he was present at the murder scene but did not commit the murder. The State also argued that appellant's flight was evidence of his guilt, but that argument was based on admissible evidence. Appellant has directed us to no other relevant information in the record; he merely reiterates the circumstantial evidence supporting a finding of guilt. Appellant has suffered no harm under the fourth *Almanza* factor.

Having granted appellant's motion for rehearing, we conclude, based on article 36.19 and the *Almanza* factors, that appellant has suffered no harm. We, therefore, again overrule point of error four. The Court's September 12, 1996 judgment affirming appellant's conviction remains unchanged.[3]

Schneider, C.J., and Wilson, J., also participating.

Wilson, J., concurs in the result.

---

**3.** Because we have granted appellant's motion for rehearing and issued a supplemental opinion, we dismiss appellant's request for en banc reconsideration as moot. Appellant, of course, may file a further motion for rehearing or request for en banc reconsideration. Tex.R.App.P. 100(d), (f).