Cordell JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–96–00816–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 17, 1998.

Karen Zellars, Spring, for Appellant.

John B. Holmes, Carmen Castillo Mitchell,
Houston, for Appellee.

Before SCHNEIDER, C.J., and ANDELL and TAFT, JJ.

## OPINION

TAFT, Justice.

A jury found appellant, Cordell Johnson, guilty of aggravated robbery. It also found true an enhancement allegation of a prior conviction for possession of a controlled substance, and assessed punishment at 45 years in prison. We address (1) why evidence of previous convictions was properly admissible; (2) why it was error to submit a jury instruction on flight; and (3) what is meant by "actual, not just theoretical" harm in reviewing jury charge error. We affirm.

### Facts

Three saleswomen, Kim Huynh, Thu Huynh, and Binh Tram, were present when a man entered their jewelry store around 11:20 a.m. on December 26, 1994. Kim tried to assist the man, but he kept asking for the "custom man." A second man, appellant, entered, and Kim sent the first man to Thu. Kim stood face-to-face with appellant as he asked her about a late Christmas gift for his wife and some 24–karat jewelry. When Binh came out of the restroom, Kim, alarmed that the first man was refusing help, headed to the back of the store to use the telephone. The first man then approached Kim with a gun, while appellant put his hand on the counter and jumped over it. The two men took $85,000 in cash and merchandise. Kim began to follow the men after they left the store, but stopped when she saw a sheriff's patrol car arrive.

Binh had cleaned the display cases around 11:00 that morning as part of her normal routine of opening the store. Initial tests on latent finger and palm prints from the scene included appellant as a possible match. When appellant's prints were compared to those at the scene, nine prints were identified as appellant's. A detective showed a photo spread to Kim and Thu, and Kim identified appellant's photo. At trial, Kim identified appellant as the second customer. Neither Thu nor Binh could positively identify either of the two men.

Appellant, the only defense witness, testified he was in the store the day before, but was at a friend's house from 8:30 or 9:00 a.m. until 2:30 p.m. on the day of the robbery. He also testified he had tried unsuccessfully to have the friend subpoenaed to appear at trial.

### Evidence of Previous Convictions

■ In his first point of error, appellant complains the trial court erred by admitting evidence of his previous convictions over his timely objection. *See Theus v. State*, 845 S.W.2d 874, 879–82 (Tex.Crim.App.1992). The court overruled appellant's pretrial motion to suppress evidence of prior convictions: two for theft, one for delivery of marihuana, and one for possession of cocaine. Appellant contends the probative value of the evidence did not outweigh its prejudicial effect. Appellant asserts that the prejudicial effect was extreme because the State used the convictions to damage his credibility, by showing he had used various aliases in the prior convictions, rather than using the evidence for its substance. Following denial of his motion to suppress,[1] appellant took the stand at trial and offered the prior convictions into evidence on direct examination. The State claims appellant waived error, if any, because he first offered the evidence of which he complains. *See Wilkerson v. State*, 736 S.W.2d 656, 662 (Tex.Crim.App.1987). We agree.

■ A defendant has the right as trial strategy to introduce such evidence of his own volition, but the mere fact that a motion *in limine* has been overruled does not mean that the trial court may not change the ruling during the trial or that the State will actually offer the evidence. *Gaffney v. State*, 940 S.W.2d 682, 687 (Tex.App.—Texarkana 1996, pet. ref'd). The general rule is that a motion *in limine* does not preserve error. *Id.*

---

1. Although styled a motion to suppress, appellant's motion was, in substance and relief sought, a motion *in limine*.

In *Morgan v. State*, 891 S.W.2d 733, 735 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), we held that a defendant must testify to raise and preserve a claim of improper impeachment through prior convictions. In that case, the defendant did not testify after the ruling on the motion *in limine*. However, in the present case, appellant testified and introduced his prior convictions on direct examination, before the State could use them for impeachment. Thus, appellant waived error. *Gaffney*, 940 S.W.2d at 687.

Accordingly, we overrule appellant's first point of error.

### Flight Instruction

In his second point of error, appellant contends the trial court erred by submitting a flight instruction that commented on the weight of the evidence.[2] Appellant complains that, under the circumstances of the case, with appellant claiming an alibi defense and denying any involvement in the crime, the trial court's instruction constituted reversible error.

### A. Preservation

■ The court charged the jury: "You are instructed that flight from the scene of an offense may be considered by you in determining the guilty knowledge of the defendant."

Appellant made the following objection to the charge:

Your Honor we do object. On the basis that the sentences is [sic] prejudicial because it is redundant. The jury already heard testimony about the two alleged perpetrators leaving. They are going to consider that to revest in the Court's charge seems to indicate that because two people left, they may be guilty of something and that's prejudicial in view of the rest of the charge.

The State argues appellant did not preserve error because (1) his objection did not comport to his complaint on appeal that the

trial court improperly commented on the weight of the evidence; (2) and the objection was not in writing, as required by article 36.14 of the Code of Criminal Procedure. We disagree.

Although appellant's objection did not use the terms "comment on the weight of the evidence," it did call the trial court's attention to the charge indicating appellant may be guilty because he left the store. This captured the essence of appellant's complaint on appeal.

■ The writing requirement in article 36.14 is satisfied if the objection is dictated to the court reporter in the presence of the court before the charge is read to the jury. Tex.Code Crim. P. Ann. art. 36.14 (Vernon Supp.1998). Appellant complied with the article's provisions.

### B. Error

■ The Code of Criminal Procedure requires that the charge delivered to the jury must not express "any opinion as to the weight of the evidence, not summing up the testimony [or] discussing the facts." *Id.* It is well-established that a jury instruction on flight is improper because it comments on the weight of the evidence. *Santos v. State*, 961 S.W.2d 304, 305 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).

### C. Harm

■ When assessing preserved jury charge error, the burden is on appellant to persuade this Court that the erroneous jury instruction was harmful. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994). Our evidentiary review is designed to "illuminate the *actual, not just theoretical, harm* to the accused." *Almanza v. State*, 686 S.W.2d 157, 174 (Tex.Crim.App.1985) (emphasis added). While the error here certainly had the potential to harm appellant, there is nothing in the record or in appellant's

---

2. We have seen too many recent cases containing clear error because the trial court commented on the weight of the evidence by instructing the jury that flight may be considered as a circumstance showing guilt or guilty knowledge. *Giesberg v.* *State*, 945 S.W.2d 120 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd) (objected-to error harmless); *Santos v. State*, 961 S.W.2d 304 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (unobjected-to error harmless).

arguments, that persuades us any harm was *actually* realized in this case.

Turning to the *Almanza* factors to guide an analysis of the harm issue, we examine the nature of the error,[3] the entire jury charge, the state of the evidence (including the contested issues and weight of probative evidence), the argument of counsel, and any other relevant information revealed by the record of the trial as a whole.

### 1. Nature of the Error

What was stated in *Santos* is appropriate here, because the charge was exactly the same:

> The jury charge stated, "You are instructed that flight from the scene of an offense may be considered by you in determining the guilty knowledge of the defendant." The error in an instruction on flight is that it constitutes a comment on the weight of the evidence. That is, it singles out a particular fact and instructs the jury it may consider that fact in determining an issue in the case, the guilty knowledge of appellant. In the form submitted, the instruction assumes the existence of flight. Even though the instruction constitutes an accurate statement of the law, it magnifies a particular fact giving unfair emphasis to that fact. By the trial court's instruction permitting the jury to consider flight, which only the testimony of State's witnesses had established, and which appellant had denied, the danger is that the jury would give more credibility and weight to the State's witnesses than to appellant.

961 S.W.2d at 306. The main difference between this case and *Santos* is that appellant presented an alibi defense rather than denying flight. Thus, the danger here is that the jury might have been influenced to reject appellant's alibi defense and find him guilty on the basis that the trial court apparently believed appellant had fled from the scene of the offense.

### 2. Entire Charge

In *Santos,* nothing else in the charge impacted the analysis. *Id.* By contrast, immediately after the flight instruction in appel-

lant's jury charge, the trial court instructed the jury on the defense of alibi. Appellant argues it simply made no sense to give the flight instruction and follow it immediately on the succeeding page with the alibi instruction.

What is initially noteworthy about appellant's alibi instruction is that it is also an impermissible comment on the evidence. The instruction stated:

> The defendant in this case has urged the defense of alibi, that is, that *if the offense was committed,* as alleged, the defendant was, at the time of the commission thereof, at another and different place from that at which such offense was committed and therefore, was not and could not have been the person who committed the same. Now, if you have a reasonable doubt as to the presence of the defendant at the place where the offense was committed, *if an offense was committed,* at the time of the commission thereof, then you will find the defendant not guilty.

(Emphasis added.) Not only did the alibi charge single out, and thus emphasize, only the evidence appellant offered to show alibi, in the italicized portions it appears to question whether any offense was committed at all. This had the *potential* of conveying the trial court's apparent opinion that perhaps no offense was committed, thereby questioning the credibility of the State's witnesses.

■ In *Holliman v. State,* the Fourteenth Court of Appeals thoroughly analyzed the alibi defense. 879 S.W.2d 85 (Tex.App.—Houston [14th Dist.] 1994, no pet.). Based on the rationale that the alibi defense merely negates the identity element of the offense, the court held the denial of a requested alibi instruction was proper. *Id.* at 87. Because it is proper to deny the alibi instruction, and because an alibi instruction emphasizes evidence presented by the defendant, an alibi instruction constitutes an impermissible comment on the weight of the evidence, just like a flight charge. This does not justify submitting a flight charge, but it does illustrate that a charge commenting on the weight of the

---

**3.** Although not expressly included in the *Almanza* list, the nature of the error is implicitly an impor-

tant part of the analysis. *Cf., Almanza,* 686 S.W.2d at 171.

evidence does not necessarily impact on the jury's verdict.

### 3. State of the Evidence

The state of the evidence, including the contested issues and weight of probative evidence, is the most important factor in the analysis. When the evidence is overwhelming, it is obviously less likely the jury was influenced by an erroneous jury instruction than by the weight of the probative evidence itself.

Each of the three eyewitnesses testified they arrived at the jewelry store about 11:00 a.m. on December 26, 1994. They cleaned the countertops with Windex and appellant and his co-defendant were the first customers who entered. The eyewitnesses described for the jury where appellant stood and where his co-defendant stood, and where appellant jumped over the counter. The crime scene investigator testified to the latent prints that were recovered from the countertops. Only 18 prints were recovered. Nine of them were identified as appellant's. These nine prints were all recovered from two countertops where appellant had been standing and where he had jumped over the counter. The other nine prints that could not be identified, other than as not belonging to appellant, were on countertops other than the one at which appellant had been. In addition, two of appellant's palm prints were on the *back* of the countertops indicating that appellant was *behind* the counter when these prints were made. The manner in which the jewelry store was laid out did not allow for customers to go behind the counters.

Although two of the three eyewitnesses could not identify appellant, the eyewitness who owned the jewelry store, and who was responsible for activating the buzzer to let customers into the store, identified appellant both in a photo array and at trial. She had had the opportunity to view appellant from the time he sought entrance. Because she had asked another employee to serve the other defendant who entered first, she personally served appellant and had the best opportunity to observe him.

Appellant's alibi defense was that he had been at the home of a person, whom he was unable to obtain by subpoena, on the day of the offense during the time the offense was committed. To explain his fingerprints on the countertops, appellant claimed to have been in the store about 10:30 or 11:00 a.m. the day before, on Christmas day. There was testimony the store had been open from about 10:30 a.m. to 5:00 p.m. on Christmas Day, and that there were many customers that day, from six to 12 at times. The prosecutor got appellant to admit that the other customers were looking at jewelry just like he was, implying that they also would have been touching the countertops and leaving prints. All three of the State's eyewitnesses who were also present on Christmas Day testified that appellant had not been in the store that day and that December 26th was the first time they had ever seen appellant.

The store employees routinely cleaned the glass countertops not only at the beginning of the day, but after each customer, to assure the cleanliness of the jewelry display cases. Furthermore, it simply does not make sense that only 18 prints would have been left from the day before and that half of them were appellant's with no other prints in that one area where two of the five display cases where located. The overwhelming objective print evidence establishes that appellant left his prints at the time the offense was committed.

In regard to appellant's credibility, he testified on direct that he had four prior convictions, including two felony distribution of drugs cases and two misdemeanor thefts. On cross-examination, appellant also admitted a fifth conviction for trespass. Appellant also admitted that during most of his convictions he lied to the court, the prosecutor, the clerk, and even his attorney, by using an alias that was not his true name.

Another consideration is that this case is not one in which there was controverted testimony regarding flight, as in *Santos*. *See Santos*, 961 S.W.2d at 306–7. Moreover, the only "flight" was appellant and his co-defendant leaving the scene of the crime after robbing the persons in the jewelry store. There was nothing about the "flight" in this case which raised an inference of guilt. This is contrary to the State's evidence in *Santos*

where the defendant was observed to run when the victim screamed. *Id.* at 305.

The state of the evidence provides strong reasons to believe the jury found appellant guilty based on the probative weight of the evidence, rather than because of the jury instruction on flight.

### 4. Argument of Counsel

Although it would have been perfectly appropriate for the prosecutor to argue flight as a circumstance of guilt, even without the erroneous flight instruction, neither side mentioned flight during argument. This is understandable in that "flight" was not an important or controverted matter in this case.

### 5. Other Relevant Information

The trial in this case took two days for presentation of testimony. After the jury retired, it began asking for evidence. Despite the trial court's apparent misunderstanding that all of the evidence had not been provided, the jury pressed the court for access to the fingerprint cards of appellant's latent prints lifted at the scene. The jury identified the exhibits accurately by number and even drew a diagram of the display counters in the jewelry store. The latent print exhibits had small sketches of where on which countertop each of appellant's prints was recovered. It took the jury 35 minutes to obtain the evidence. After that, the jury deliberated only 37 minutes before announcing its jury verdict in the courtroom. From these facts, it appears the jury primarily focused its attention on the prints, which provided very strong evidence of appellant's guilt. This is not a case like *Santos* where it took the jury substantial time to resolve contested fact issues in the case. *See id.* at 307.

### 6. Resolution

Any conclusion that jurors in this case were influenced by the flight instruction is strictly speculative. Indeed, it assumes that because there was potential for harm, that harm was realized. The burden to show some *actual, not just theoretical,* harm is on appellant. We hold that he did not meet his burden based on a thorough examination of the entire record of this case. Accordingly, we overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.

ANDELL, J., concurs.

ANDELL, Justice, concurring.

I am concerned with the apparent disregard for established law in this area. This is the most recent in a line of cases where trial courts have instructed the jury on flight.

A suggestion in a jury charge that certain evidence is true or untrue is a comment on the weight of the evidence. *Russell v. State,* 749 S.W.2d 77, 78 (Tex.Crim.App.1988). A court's charge in a criminal case may not assume that any fact has been proved against the defendant, however strong the evidence may be. *See Marlow v. State,* 537 S.W.2d 8, 9 (Tex.Crim.App.1976). Even when the defendant offers no evidence, the charge should not assume the State's evidence is true. *See id.* at 10. There appear to be only two exceptions when a court may comment on the weight of the evidence—when the court takes judicial notice of a fact, and when the accused makes a judicial admission. *See id.* at 9–10.

Only the State offered evidence of flight, and the fact was not judicially noticed or admitted. Rather than instructing the jury to "consider flight, *if any,*" in determining guilt, the court's charge assumes there was flight. To present this assumption to the jury was error. This error was then compounded by instructing the jury it could consider flight as evidence of appellant's guilty knowledge. Thus, the instruction not only wrongly magnified a particular fact and gave it unfair emphasis, it also assumed it was appellant fleeing thereby negating appellant's defense theory.

In my opinion, the very nature of the error in submitting an instruction on flight poisons a defendant's constitutional right to a fair trial. When, as here, such error is committed in disregard of an established line of cases forbidding it, I believe we have a heightened duty of scrutiny. At some point, such error approaches "structural" error, which is not subject to a harmless error analysis. *See Arizona v. Fulminante,* 499

U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991). While that point may not have been reached in this case, it comes dangerously close. I reluctantly concur.