Opinion issued
June 30, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-00200-CR

———————————

BRIAN
O’NEAL RICHARDSON, Appellant

V.

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the 122nd District Court 

Galveston County, Texas



Trial
Court Case No. 08CR1120

 



 

 

MEMORANDUM OPINION

          Without
a sentencing recommendation from the State, appellant, Brian O’Neal Richardson,
pleaded guilty to the offense of murder.[1]  Appellant elected to have the trial court assess
punishment.  After hearing evidence
relevant to sentencing, the trial court assessed punishment at 41 years in
prison.  On appeal, appellant raises two
issues in which he contends the trial court improperly admitted
extraneous-offense evidence during the punishment hearing.

          We
affirm. 

Background

A grand jury indicted
appellant for the murder of Gary Bell. 
The indictment provides, in relevant part, that on or about April 12,
2008, appellant “intentionally or knowingly” caused the death of Gary Bell by
hitting Bell “with his hand or hands and/or by choking [Bell] with his hand or
hands or with an object unknown to the Grand Jury and/or by asphyxiating [Bell]
by ligaturing (hog-tying) the hands and legs of [Bell] and/or by drowning [Bell]
with water.”  

Appellant was also charged
by separate indictments with the offenses of felony theft, tampering with
evidence, aggravated kidnapping, and assault of a public servant.  During the pretrial conference, appellant
informed the trial court that he would plead guilty to the offense of murder
and elected to have the trial court assess punishment.  The State informed the trial court that it
had agreed to dismiss the felony theft, tampering with evidence, aggravated
kidnapping, and assault of a public servant charges against appellant.  

Two days later, the trial
court conducted the punishment phase.  Mary
Jowers was the State’s primary witness. 
Jowers testified regarding the events surrounding Bell’s murder.  She stated that she had met Bell at a motel
and agreed to have sex with him for $200, which Bell paid to her.  Jowers testified that after she and Bell
smoked crack cocaine, she blacked out in the motel room.  When she woke up, Jowers believed that Bell
had sexually assaulted her while she was unconscious.  Bell had also removed the $200 from her purse.

Bell drove Jowers to another
motel, the Comfort Inn in Texas City.  Once
there, Jowers went inside to speak to appellant.  Jowers had known appellant for approximately
22 months and testified that she had a sexual relationship with appellant and
shared her prostitution profits with him. 
Jowers told appellant that Bell had raped her and taken $200 from
her.  

Appellant got in a car and
went after Bell who had already left in his car.  Meanwhile, Jowers went to Room 112 of the
Comfort Inn.  After some time, appellant
arrived at the room accompanying Bell. 
Another of Jowers’s acquaintances, William Perry, also arrived at the
room.  The men questioned Bell about
Jowers’s accusations.  Jowers testified
that Bell admitted to sexually assaulting her and taking the $200 from her
purse.  Jowers stated that appellant and
Williams then “attacked” Bell by hitting and kicking him and took Bell into the
bathroom.  She could hear water running
and a sound she described as “like somebody wrestling.”  

Jowers testified that
appellant came out of the bathroom and asked for belts that were in a
suitcase.  Appellant took three belts
into the bathroom.  At one point, Jowers
looked into the bathroom.  She could see
in the bathroom mirror that the men had Bell in the bathtub.  Jowers testified that at times appellant was
alone in the bathroom with Bell and at other times Williams was with Bell.  

Another of the State’s witnesses,
Arnold Garza, testified that he was also in the motel room that morning.  He stated that appellant brought him into the
bathroom when Bell was in the bathtub. 
Appellant tried to justify what they were doing to Bell by explaining that
Bell had raped and stolen money from Jowers. 
Garza did not see Bell because the shower curtain was drawn, but he
could hear Bell kicking and asking for help. 

Jowers testified that she
eventually left the motel room.  When she
returned, Bell was no longer in the bathroom. 
Jowers testified that she was “high” on drugs when she returned and did
not ask where Bell was.  She stated that
she knew that Bell must be somewhere in the room, but she did not hear
him.  Jowers testified that for the rest
of the day she and appellant ate, smoked crack cocaine, and had sex.  

Later that night, appellant
asked Jowers to get a luggage cart.  She then
learned that Bell’s body had been in the closet.  Appellant took Bell’s body out of the closet
and loaded it onto the luggage cart. 
Jowers testified that Bell was not making any sound and was not moving
at that point.  Jowers and appellant loaded
Bell’s body into Bell’s car.  Appellant
drove the car to Galveston with Jowers as a passenger.  Once in Galveston, appellant and Jowers
placed Bell’s body in Galveston Bay.  Jowers
testified that she, appellant, and Garza were arrested the next day in Houston
while driving Bell’s car.

At the punishment hearing,
appellant stipulated to evidence showing that Bell’s body was recovered from
the water the next day, and photographs admitted into evidence show Bell’s body
as it appeared when recovered from the water. 
Bell was found naked with his hands and feet bound with belts.  A shoelace was around his neck.  Appellant stipulated that the t-shirt that appellant
wore during Bell’s beating had his, Jowers, and Bell’s DNA.  He also stipulated that the shoelace found
around Bell’s neck had his and Bell’s DNA on it.  

The medical examiner, who
conducted Bell’s autopsy, testified that he determined Bell’s cause of death to
be multiple blunt force trauma, asphyxiation, drowning, and ligature
restraint.  He concluded that the manner
of death was homicide.  

The defense offered the
testimony of a number of witnesses, including appellant.  In his testimony, appellant admitted that he had
followed Bell and brought him back to the Comfort Inn after he learned from
Jowers that Bell had raped her and had stolen her money.  In his testimony, however, appellant
portrayed Williams as the primary actor, who beat and tied up Bell.  Appellant admitted to assisting Williams by,
for example, retrieving the belts used to tie up Bell and to holding Bell’s
hands and legs.  Appellant denied hitting
Bell or tying the ligature around Bell’s neck. 
Appellant testified that he assisted Williams with regard to the
violence visited upon Bell because he was afraid of Williams and claimed that
Williams threatened appellant’s family.  Appellant
also admitted to disposing of Bell’s body after Williams left the motel room
and never returned.

Appellant stipulated that he
was previously convicted of theft of a firearm, theft from a person—which was reduced from aggravated
robbery—forgery,
felony theft, unauthorized use of a motor vehicle, evading arrest, and two
offenses of burglary of a motor vehicle. 
Appellant testified that he had not been previously convicted of a
violent crime or an assaultive offense. 
The defense also called several other witnesses to testify on
appellant’s behalf, including appellant’s mother.  

At the conclusion of the
hearing, the trial court stated that appellant had pleaded guilty and been
found guilty of the offense of murder. 
The trial court further stated that it had “listened carefully to the
evidence” and “reviewed the presentence investigation [report].”  The trial sentenced appellant to 41 years in
prison.  This appeal followed.

 

Admission of Extraneous
Offense Evidence

Appellant presents two
issues on appeal in which he contends that the trial court abused its
discretion in permitting the State to ask his mother whether she had heard that
appellant had been indicted for the offenses of assault on a public servant.  

Relevant Portions of the
Record

During the defense’s case in
chief, the following exchange occurred between defense counsel and appellant’s
mother:

[Appellant’s
counsel]:  What—have you ever known your
son to be violent or assaultive before?

 

[Appellant’s mother]:  It
would take a lot.  He would have to be
pushed to a certain extent.  I believe
that everyone has a breaking point.

 

Q.  Have you—would you describe—

A.  I’ve never seen
him violent where he wants to take someone’s life or hurt somebody—

 

Q.  Your son—

 

A.  —draw blood from [sic] or anything of that nature.

Q.  [H]as your son
ever been convicted of anything violent?

 

A.  No, sir.

 

Q.  Or assaultive?

 

A.  Not that I know
of.

 

Q.  Have you ever
witnessed him being violent or assaultive to anybody? 

 

A.  No. sir.  

 

          When appellant’s
mother was cross-examined by the State, the following dialogue occurred:

[State’s counsel]:  The Defense counsel asked you have you ever
known your son to be violent or assaultive. 
Ms. Richardson, I’m Larry Drosnes, Assistant Criminal District Attorney.
 And you and I’ve never talked before,
have we?

 

[Appellant’s mother]:  No,
sir.

 

[State’s counsel]: 
Had you heard, Ms. Richardson, that your son was indicted for assault on—

 

[Appellant’s counsel]:  Your Honor, I object to that.  We had an agreement before this trial started that
those would not be brought in at the punishment phase of the trial.  They have been dismissed.  I took the District Attorney’s Office at their
word that they would not present those in the punishment phase or any of the
cases that were dismissed in the punishment phase. 

 

[State’s counsel]: I believe he opened the door—

 

[Appellant’s
counsel]:  And I asked her has she ever
witnessed him being assaultive.  And as
the Court’s well aware, opening the door is narrowly construed.  So, he would be allowed to bring in evidence
that she did witness.  My questions were
has he ever been convicted of an assaultive or violent offense.  Then I asked her has she ever witnessed him
being assaultive or violent.  So that
would open the door—as the Court’s aware, opening the door is narrowly
construed.  So, he would be allowed to
show that he has been convicted or that she has witnessed.  

 

[State’s
counsel]:  The question that was asked,
you can look it up.  He said, “Have you
ever known your son to be violent or assertive” [sic].  He’s opening the door.  He’s suggesting that he’s never been violent
or assertive [sic].  But he’s opening the
door for me to just ask that “have you heard” question.

 

[Appellant’s counsel]:  The Court knows that he was indicted and the
cases were dismissed.  If he’s going to
get into the facts of the case—

 

[State’s
counsel]:  No.  I didn’t ask for the facts.

 

THE
COURT:  This is the ruling.  I believe the question was, “Are you aware of
any violent or assaultive nature?”  I
would allow some questions in that area.  Objection overruled.

 

[State’s
counsel]:  Thank you, Your Honor. 

 

[State’s
counsel]:  Ms. Richardson, have you heard
that your son while he was in the Galveston County jail was indicted
for the offense of assault on a public servant for two deputies in the county
jail?

 

[Appellant’s mother]:  I heard something of that nature.


 

[State’s
counsel]:  That’s all I have, Your Honor.
 I pass the witness.

 

[Appellant’s counsel]: 
No further questions.  

 

Failure to Preserve Issues 

In his first issue,
appellant contends that the trial court abused its discretion when it overruled
his objection to the admission of his mother’s testimony regarding the
assault-of-a-public-servant offenses because the State failed to prove the offenses
beyond a reasonable doubt.  In his second
issue, appellant contends that the State failed to give him adequate notice
that it would offer evidence of the subject offenses.

We agree with the State that
appellant has failed to preserve either appellate issue.[2]  To preserve a complaint for our review, a
party must have presented to the trial court a request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R.
App. P. 33.1(a)(1); Mosley v. State,
983 S.W.2d 249, 265 (Tex. Crim. App. 1998). 
The contention on appeal must comport with the specific objection made
at trial.  Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); Rothstein v. State, 267 S.W.3d 366, 373
(Tex. App.—Houston
[14th Dist.] 2008 pet. ref’d) (“An objection stating one legal theory may not
be used to support a different legal theory on appeal.”).

Here, appellant objected
only to the subject testimony on the ground that the State was violating the
plea agreement by eliciting testimony regarding the extraneous assault offenses.  Appellant made no objection in the trial
court that the extraneous offense evidence should not be admitted because the
State did not prove the assault-of-a-public-servant offenses beyond a
reasonable doubt.  Appellant also did not
object on the ground that the State had not provided adequate notice of its
intent to offer the evidence.  

Appellant contends that
error was preserved in a pre-trial filing entitled, “Defendant’s Written
Objection to Admissibility of Extraneous Offenses, Request for Procedural
Determination by Trial Court with Findings of Fact and Conclusions of Law, and
for Limiting Instructions.”  In his
brief, appellant writes that in this filing he “specifically invoked Texas
Rules of Evidence 401, 402, 403, and 404(b), and Fifth, Sixth, Fourteenth
Amendments to the United States Constitution, Article 1, Sections 1.04, 1.05,
and 1.051 of the Texas Code of Criminal Procedure.”  With regard to the written objections
contained in this filing, the trial court ruled in a pre-trial hearing as
follows: “At least at this point, we’ll treat this as a Motion in Limine, not
making any predetermination as to whether it will be admissible or not.  I would ask you both to approach before
mentioning it in front of the jury.”

A motion in limine “is a preliminary
matter and normally preserves nothing for appellate review.”  Fuller
v. State, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (citing Gonzales v. State, 685 S.W.2d 47, 50
(Tex. Crim. App. 1985)); Johnson v. State,
981 S.W.2d 759, 760 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (“The general
rule is that a motion in limine does not preserve error.”).  To preserve error regarding the subject matter
of a motion in limine, the appellant must object at the time the subject is
raised during the trial.  Fuller, 253 S.W.3d at 232; see also Tex. R. App. P. 33.1(a)(1)(A).  Appellant did not object to the testimony
regarding the assault offenses on the grounds he now raises on appeal at the
time the testimony was elicited.  Thus, the
pre-trial motion cited by appellant does not preserve the error he asserts in
each of his appellate issues.  See Wilson, 71 S.W.3d at 349; see also Tex. R. App. P. 33.1(a)(1); Mosley, 983 S.W.2d at 265.

Harmless Error

Even if we assume that the
trial court abused its discretion by admitting the extraneous-offense testimony,
we will not reverse the judgment if the error was harmless.  See Tex. R. App. P. 44.2(b).  More precisely, we will not reverse a trial
court’s judgment based on the erroneous admission of evidence unless the error
affects a substantial right.  See id.; Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see also Ruiz v. State, 293 S.W.3d 685,
695 (Tex. App.—San
Antonio 2009, pet. ref’d) (holding that admission of extraneous-offense
evidence during punishment phase, when State failed to provide notice required
by statute, is non-constitutional error).  “A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury’s verdict.”  See King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997).  Stated conversely, a substantial right is not
affected by the erroneous admission of evidence “if the appellate court, after
examining the record as a whole, has fair assurance that the error did not
influence the jury, or had but a slight effect.”  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

          Here,
the record does not show that appellant’s substantial rights were affected.  The record contains ample evidence on which the
trial court might have based its sentence—namely, the evidence showing the particularly
violent and brutal nature of the crime.  The
evidence showed that Bell was bound, beaten, strangled, and drowned.  Appellant then dumped Bell’s nude body into
Galveston Bay.  At the punishment
hearing, the medical examiner characterized the methodology used to asphyxiate
Bell as “torture.”  

          The
trial court also heard evidence that appellant had been previously convicted of
aggravated robbery, forgery, felony theft, unauthorized use of a motor vehicle,
evading arrest, and two offenses of burglary of a motor vehicle.  In addition, the evidence showed that after
Bell’s murder, appellant stole Bell’s car and was driving it when he was
arrested.  Although these were
non-violent crimes, the evidence showed that appellant had a lengthy criminal
history.  

          Moreover,
although appellant’s mother testified that she had heard that appellant had
been indicted for the offenses of assault of a public servant, no evidence was
admitted regarding the details of the unadjudicated offenses.  We further note that the State did not rely on
or reference the subject extraneous evidence in its closing argument.  Lastly, the trial court was free to
disbelieve appellant’s testimony that he played only a small role in Bell’s
death.  

In sum, the admission of the
complained-of extraneous offense evidence did not have a substantial and
injurious effect or influence on the sentence imposed.  See King,
953 S.W.2d at 271.  After examining the
record as a whole, we are fairly assured that any error did not influence the trial
court in sentencing appellant, or had but a slight effect.  See Motilla,
78 S.W.3d at 355.  Therefore, any error
by the trial court in admitting evidence of the extraneous offenses was
harmless.  

Conclusion

          We
affirm the judgment of the trial court.

 

 

Laura Carter Higley

                                                                   Justice


 

Panel consists of
Justices Jennings, Higley, and Brown.

 

Do not
publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).





[2]           Appellant frames his first issue in
terms of sufficiency of the evidence.  A
challenge to the legal sufficiency of the evidence supporting a conviction
cannot be forfeited for failure to object at trial.  See Moff
v. State, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).  However, when an appellant complains on appeal
of the sufficiency of the evidence of an extraneous offense at punishment, his
complaint is not truly about sufficiency.  Instead, his complaint pertains to the
admission of the evidence.  See Malpica v. State, 108 S.W.3d 374, 378–79 (Tex. App.—Tyler 2003, pet. ref’d.).
 Such complaint is a claim of evidentiary
trial error, a complaint that is forfeited for failure to object in the trial
court.  See Moff, 131 S.W.3d at 490.