**Opinion issued March 2, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-19-00694-CR

————————————

### EDMOND BAKER, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 81673-CR**

---

### MEMORANDUM OPINION

A jury convicted appellant of stalking[1] and assessed his punishment at 10 years' confinement and a $10,000 fine, which the trial court then probated, placing appellant under community supervision for seven years. In two related issues on

---

[1]    *See* TEX. PENAL CODE 42.072.

appeal, appellant contends that the jury charge was fundamentally erroneous and permitted the jury to return a non-unanimous verdict. We affirm.

## BACKGROUND

Because appellant does not challenge the sufficiency of the evidence to support his conviction for stalking, we provide only a brief recitation of facts. After 11 years of marriage, appellant and Kamisha Lavern Jackson divorced in 2013. Appellant and Jackson had two daughters. Jackson remarried in 2014, and from 2016 until the time of trial in 2019, appellant harassed Jackson both in person and via text messages.

*Appellant's conduct*

For example, in 2016, appellant arrived at Jackson's home with their two children. Appellant got into a verbal altercation with Jackson's husband, threatening to "beat [his] ass right now." When Jackson intervened, appellant, who had been walking to confront Jackson's husband, got back in the car and drove away with the children. On another occasion, appellant confronted Jackson at a recreation center during one of their children's volleyball games, telling Jackson that she was going to hell and that God did not hear her. He also followed Jackson on other occasions calling her a demon, witch, or "ho." Jackson's description of the confrontation at the volleyball game was corroborated by several witnesses, one of whom described appellant as being loud, aggressive, and inappropriate while speaking to Jackson.

2

The altercation ended only when staff at the recreation center called the police. On another occasion, appellant followed Jackson and one of their daughters as they shopped at an HEB grocery store. As he followed them through the store, appellant started recording Jackson with his cell phone and telling her that she should be at home with her husband. Jackson testified that, during each of the confrontations, she was afraid of appellant and was concerned that he could become physical.

Appellant also harassed Jackson by sending thousands of text messages to her. He repeatedly called her a "jezebel," "ho", "bitch," and "whore." He accused Jackson of being demon-possessed and told her that she needed an exorcism. He claimed that because they had been married, Jackson was bound to him until he died. He told Jackson that "[j]udgment day is coming soon for y'all though" and asked her, "What would you do different if you knew today was your last day here on Earth?"

In 2016, Jackson went to law enforcement and provided them with several cellular downloads documenting appellant's behavior. Because appellant's harassing texts continued even after law enforcement talked to him during a "courtesy call," he was charged with harassment, with bond conditions that prohibited non-custody communications with Jackson.

*The trial*

Appellant was ultimately indicted for stalking, and the case went to trial with appellant representing himself pro se. During voir dire, the State differentiated between harassment and stalking by stating that stalking was "harassment on steroids." The State explained that the jurors had to agree that the offense of stalking occurred on multiple dates; that the State had to prove at least two dates; and that it had to occur on more than one occasion. When asked what elevated the offense from a misdemeanor to a felony, the State responded that it was a felony when there was "a similar scheme or conduct, and that it's on more than one occasion." After another venireperson inquired similarly, the State explained that stalking occurs "over the course of multiple dates." There was much discussion with the venire about how multiple incidents of harassment were required to elevate the case to felony stalking.

During trial, when Lake Jackson Police Detective O. Franklin was asked why she chose to charge appellant with stalking rather than harassment, she responded that the harassment had occurred on multiple occasions. On cross-examination she further explained:

> And we had the document[ed] history of—and evidence to support the incident that took place at the [volleyball game], witnesses willing to testify based on the account; and that right there constituted enough for the harassment charge. And then when I assume the case, it becomes a new investigation, obviously; but stalking there was one more count in the same scheme, course of action course of conduct as before. More texts in the same nature received from [appellant] as before in the

[harassment] case.  That constituted—that was the evidence we had. So, that constituted [sic] me to initiate the stalking charge.

*The Jury Charge*

The abstract portion of the jury charge provided in relevant part:

Our law provides that a person commits the offense of STALKING if the person, ***on more than one occasion and pursuant to the same scheme or course of conduct*** that is directed specifically at another person, knowingly engages in conduct that:

1. *Constitutes an offense* under Texas Penal Code Section 42.07 (harassment), or that the actor knows or reasonably should know the other person will regard as threatening bodily injury or death;

2. *Causes the other person to be placed in fear* of bodily injury or death or in fear that an offense will be committed against the other person's property, or to be harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

3. *Would cause a reasonable person to*:
   a. fear bodily injury or death for herself,
   b. fear that an offense would be committed against the person's property, or
   c. feel harassed, annoyed, alarmed, abused, tormented, embarrassed or offended.

Our law provides that a person commits an offense under Texas Penal Code 42.07 (harassment) if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

1. initiates communication and in the course of the communication makes a comment or suggestion that is obscene, or

2. sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another, or

5

3. threatens, in a matter reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property.

(Emphasis added).

There were nine application paragraphs in the jury charge. Each application paragraph began with the same introductory sentence:

Now, if you find from the evidence beyond a reasonable doubt that on or about the (date of the alleged harassment, including dates from June 2016 to January 2017) in Brazoria County, Texas, and before the presentment of the indictment, the defendant, EDMOND BAKER, JR., did then and there, *and pursuant to the same scheme and course of conduct* directed specifically at Kamisha Jackson, knowingly . . . (Emphasis added).

Following this introductory sentence, each application paragraph alleged the three, separate elements of stalking, i.e., that appellant's conduct (1) "constitutes an offense under section 42.07 (harassment) or that the actor knows or reasonably should show the other person will regard as threatening" bodily injury or death, bodily injury or death for a family member, or an offense against the other person's property; (2) "caused the other person [or] a member of the other person's family . . . to be placed in fear of bodily injury or death . . . ; and (3) "would cause a reasonable person to" fear bodily injury or death . . . ." For example, the first two application paragraphs provided:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of June, 2016, in Brazoria County, Texas, and before the presentment of the indictment, the defendant, EDMOND

6

BAKER, JR., did then and there, and pursuant to the same scheme and course of conduct directed specifically at Kamisha Jackson knowingly engage in conduct that constituted an offense under 42.07 of the Texas Penal Code, namely, by intentionally or knowingly threatening to assault the husband of the said Kamisha Jackson and the defendant's said conduct would cause a reasonable person to fear, and did cause the said Kamisha Jackson to be placed in fear of bodily injury or death or be in fear that an offense would be committed against Kamisha Jackson's property or feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; OR

If you find from the evidence beyond a reasonable doubt that on or about the 20th day of August, 2016, in Brazoria County, Texas, and before the presentment of the indictment, the defendant, EDMOND BAKER, JR., did then and there and pursuant to the same scheme and course of conduct directed specifically at Kamisha Jackson knowingly engage in conduct that the defendant knew or reasonably should have known that said Kamisha Jackson would regard as threatening bodily injury or death to said Kamisha Jackson, to-wit: by intentionally or knowingly following and speaking to the said Kamisha Jackson in a threatening manner in a public place to wit: the Lake Jackson Recreation Center located in Lake Jackson, Brazoria County Texas and the defendant's said conduct would cause a reasonable person to fear, and did cause the said Kamisha Jackson to be placed in fear of bodily injury or death or be in fear that an offense would be committed against Kamisha Jackson's property or feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; OR

[followed by 7 more application paragraphs].

None of the application paragraphs included the statutory requirement that the stalking occurred "on more than one occasion," but each application paragraph did require the State to show that the stalking was done "pursuant to the same scheme or course of conduct." Each application paragraph then provided a different allegation for how the State proved the first element of the stalking, i.e., that the

7

defendant's conduct "Constitutes an offense under Texas Penal Code Section 42.07 (harassment), or that the actor knows or reasonably should know the other person will regard as threatening bodily injury or death." For example, different application paragraphs showed prohibited conduct by alleging threats to assault Jackson's husband, speaking to her in a threatening manner at the recreation center, following and recording her in the HEB grocery store, sending repeated text messages, including messages referring to Jackson as "bitch, whore, or jezebel," containing vulgar images, or referencing "judgment day," and "biblical verses." The application paragraphs were charged disjunctively, with the application paragraphs separated by the term "OR."

## JURY CHARGE ERROR

In two related issues, appellant contends that he "was denied his constitutional right to a unanimous jury verdict" and "the jury charge [was] fundamentally defective[.]"

*Standard of Review*

The trial court has an absolute duty to prepare a jury charge that accurately sets out the law applicable to the case. *See* TEX. CODE CRIM. PROC. art. 36.14; *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008); *see also Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) ("The purpose of the trial judge's jury charge is to instruct the jurors on all of the law that is applicable to the

8

case."). A review of jury charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we must determine whether error actually exists in the charge, and, second, if error does exist, whether sufficient harm resulted from the error to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. When, as here, the defendant does not object to the jury charge, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *See Ngo*, 175 S.W.3d at 743–44. Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Id.* at 750. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). The record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750.

*Analysis*

The stalking statute requires a person to commit an offense "on more than one occasion and pursuant to the same scheme or course of conduct." *See* TEX. PENAL CODE § 42.07(a). In this case, the abstract portion of the jury charge contained this entire phrase, but the nine individual application paragraphs omitted the "on more than one occasion" language, leaving only the "pursuant to the same scheme or

course of conduct" language.  Appellant contends that this omission, coupled with the fact that the application paragraphs were charged disjunctively using "OR," means that the jury could have convicted him based on any ONE of the application paragraphs, thereby destroying the required jury unanimity.

*Jury Unanimity*

Because this is a two-part complaint about the jury charge, we first consider whether the application paragraphs violated the unanimity requirement.  Appellant argues that

> [t]he jury charge allowed some jurors to believe the act committed was threatening to assault the husband of said Complaint [sic], or by speaking to the said Complaint [sic] in a threatening manner in a public place, or by following and recording the said Complaint [sic] with a cellular phone in a public, or by sending repeated electronic communications to-wit:  text messages and multimedia messages, or by sending repeated electronic communications to-wit:  Text messages and multimedia messages referring to Complaint [sic] as bitch, whore, or jezebel, or by sending repeated electronic communications to-wit: text messages and multimedia messages containing vulgar or sexually explicit content, or by sending repeated text messages or multimedia messages to the said Complaint [sic], or by sending text messages to the said Complaint [sic] referencing biblical verses.

The State responds that the nine application paragraphs allege multiple instances of prohibited conduct[2] that make up the single offense of stalking, and that

---

[2]    The prohibited conduct under the stalking statute is "an offense under [the harassment section of the Penal Code] of that the actor "knows or reasonably should know the other person will regard as threatening . . . ." *See* TEX. PENAL CODE§ 2.072(a)(1).

10

the jury need not agree on the method and means of prohibited conduct. We agree with the State.

In *Lafaitt v. State*, No. 12-18-00351-CR, 2020 WL 827136, at \*6 (Tex. App.—Tyler Feb. 19, 2020, no pet.) (mem. op., not designated for publication), the jury charge provided four different methods that appellant committed the prohibited conduct under the stalking statute—twice initiating communication with the complainant during which he made an obscene comment, sending repeated electronic communications to the complainant in a manner reasonably likely to harass, and threatening to inflict bodily injury on the complainant. *Id.* On appeal, the defendant argued that the application paragraph allowed the jury to find him guilty without unanimously agreeing on which elements of the offense were committed. *Id.* The court of appeals disagreed, explaining as follows:

> [I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission. *Francis v. State*, 36 S.W.3d 121, 124 (Tex. Crim. App. 2000). When alternate manners and means of committing an offense are submitted to the jury in the disjunctive, it is appropriate for the jury to return a general verdict for that offense if the evidence supports a conviction under any one of them. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, no pet.); *Garcia v. State*, 212 S.W.3d 877, 886 (Tex. App.—Austin 2006, no pet.).
>
> [T]he State alleged and presented evidence of three different ways in which Appellant harassed or threatened [the Complainant] under the stalking statute. Because the offense of stalking could be committed in various ways, it was not necessary that the jurors agree upon the mode of commission and it was appropriate for the jury to return a general

11

verdict. *See Kitchens*, 823 S.W.2d at 258; *see also Francis*, 36 S.W.3d at 124.

*Id.* at *6.

The same is true in this case. Each of the nine application paragraphs include *all* of the elements of stalking[3] (absent the phrase "on more than one occasion"). The only difference in each of the nine paragraphs is that they, like the four paragraphs in the *Lafaitt* jury charge, provide a different manner or means of proving the "prohibited conduct" element of stalking. Because each application paragraph provided an alternate manner and means of committing the offense, the jury was not required to agree on which of the nine application paragraphs it found appellant to have committed. *See Alfaro v. State*, No. 14-18-00923-CR, 2020 WL 548219, at *5 (Tex. App.—Houston [14th Dist.] Feb. 4, 2020, no pet.) (mem. op., not designated for publication) (noting that jurors need not all agree on same incidents of stalking and stating that "[i]t is a correct statement of the law that the jury need not unanimously agree on alternate modes or means of committing an offense").

---

[3]     Because each application paragraph included *all* of the elements of stalking, but alleged a different manner and means of committing the "prohibited conduct" element of the offense, this case is distinguishable from *Ploeger v. State*, 189 S.W.3d 799, 803 (Tex. App.—Houston [1st Dist.] 2006, no pet.). In *Ploeger*, this Court found charge error when the statutory elements of stalking—*causing* the complainant to be placed in fear of bodily injury or death and that such conduct *would cause* a reasonable person to fear bodily injury or death—were pleaded in the disjunctive. *Id.*

12

*Omission of "On More Than One Occasion"*

Having decided that alleging a different "manner and means" of committing the "prohibited conduct" element of the offense of stalking is not error even when charged disjunctively, we consider whether the omission of the phrase "on more than one occasion" from the application portion of the charge was error.

The State relies on *Brigham v. State*, No. 05-16-01496-CR, 2017 WL 4875887 (Tex. App.—Dallas Oct. 30, 2017, pet. ref'd) (mem. op., not designated for publication), to argue that there is no jury charge error because, even if omitted from the application paragraphs, the phrase "on more than one occasion" was included in the abstract portion of the charge. In *Brigham*, also a stalking case, the abstract portion of the jury charge contained the phrase "on more than one occasion and pursuant to the same scheme or course of conduct," but the two application paragraphs, which both alleged prohibited conduct occurring on different dates, provided only that the prohibited conduct must have been "committed pursuant to the same scheme or course of conduct." The defendant in *Brigham*, like appellant here, argued that the omission of the "on more than one occasion" language from the application paragraphs was egregious error. *Id.* at *2. The court held that the omission from the application portion of the charge was not error because (1) the missing language was in the abstract portion of the charge, *and* (2) the application

13

paragraphs required the jury to find that appellant committed prohibited conduct on two specific dates, i.e., the two dates in the two application paragraphs. *Id.*

Like the jury charge in *Brigham*, the abstract portion of the charge in this case contains the language "on more than one occasion," while that language is missing from the application paragraphs. *Brigham*, however, is distinguishable from the present case on a different basis. In *Brigham*, the application paragraphs of the jury charge alleged only two instances of prohibited conduct, charged conjunctively with AND; thus, to convict Brigham of stalking, the jury necessarily had to find that he committed the prohibited conduct alleged in *both* application paragraphs, which occurred on different dates, i.e., on more than one occasion. In contrast, in this case, the application paragraphs were charged disjunctively using OR, so, under the charge, the jury did not necessarily have to agree that the alleged prohibited conduct occurred "on more than one occasion," i.e., on more than one of the dates alleged in the application paragraphs. Thus, *Brigham* does not compel the conclusion that the omission of the language "on more than one occasion" from the application portion of the charge was not error.

However, the State also argues that there is no charge error because "on more than one occasion" and "pursuant to the same scheme and course of conduct" are necessarily intertwined and that by including the terms "scheme" or "course of conduct" in the application paragraphs, that portion of the charge also required the

14

jury to find that appellant "must have committed more than one instance of prohibited conduct to be convicted of stalking."

*Egregious Error?*

We need not decide whether "on more than one occasion" is the same as a "scheme and course of conduct" such that its omission from the application portion of the charge is not error because we conclude that the alleged error, if any, did not cause egregious harm to appellant. In determining whether an error is egregiously harmful, we consider not only the allegedly erroneous portion of the charge, but also other relevant aspects of the trial. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). These relevant aspects include: (1) the entirety of the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See Sanchez*, 209 S.W.3d at 121.

### a. Entire charge

As mentioned earlier, the abstract portion of the charge required the State to show that "on more than one occasion and pursuant to the same scheme or course of conduct" appellant engaged in the alleged prohibited conduct. The application paragraphs alleged multiple dates from June 2016 to January 2017 and required the State to show a "scheme or course of conduct," language from which the jury could

15

have made a common-sense deduction that the prohibited conduct must occur on more than one occasion. *See Nava v. State*, 415 S.W.3d 289, 300 (Tex. Crim. App. 2013) ("We may use common sense in assessing how the jury likely understood the charge . . . .").

### b. Trial Evidence

At trial, appellant did not contest that he sent thousands of text messages to Jackson, and the evidence showed that he had several threatening, in-person encounters with her as well. As such, whether the prohibited conduct occurred "on more than one occasion" was not a contested issue at trial. *See Sanchez v. State*, No. 04-19-00433-CR, 2020 WL 1159044, at *2–3 (Tex. App.—San Antonio Mar. 11, 2020, no pet.) (mem. op., not designated for publication) (holding omission of element from application paragraph not egregiously harmful because "the omitted element, whether a vehicle had been used while in flight, was not a contested issue at trial"). Also, the State's case was strong. Jackson testified to multiple, in-person confrontations with appellant that caused her to fear for her safety; her testimony about appellant's behavior at the volleyball game was corroborated by several, non-related witnesses. Finally, the State introduced thousands of pages of cellular download excerpts, many of which contained obscene and threatening text messages. Thus, the weight of the probative evidence favors finding no egregious harm. *See Johnson v. State*, 981 S.W.2d 759, 763 (Tex. App.—Houston [1st Dist.]

16

1998, pet ref'd) ("When the evidence is overwhelming, it is obviously less likely that the jury was influenced by an erroneous jury instruction than by the weight of the probative evidence itself.").

### c. *Arguments of Counsel*

During closing argument, the State explained that the jury must find more than one instance of prohibited conduct to convict appellant of stalking. The State argued, "[Y]ou don't have to agree on which paragraph has been proven, as long as all 12 of you agree that he did something listed in the indictment on more than one occasion, be it text messages, be it the rec center and HEB, whatever, as long as you believe his conduct has occurred on more than one occasion." Appellant also distinguished between harassment and stalking, describing "stalking" as "supercharged harassing." The jury was repeatedly told that it needed multiple instances of prohibited conduct to convict appellant of stalking. *See Garro v. State*, No. 05-00-01539, 2002 WL 2005494, at *11 (Tex. App.—Dallas Aug. 20, 2002, pet. ref'd) (mem. op., not designated for publication) (finding no egregious harm from omission of element from application paragraph when State reviewed facts proving missing element during closing argument).

### d. *Other Relevant Information*

Beginning as early as voir dire, the State repeatedly explained that felony stalking required repeated instances of prohibited conduct, while simple harassment

did not. The State explained that harassment can be a "building block" of stalking and that "[s]talking is like harassment on steroids." Specifically, the State explained to the jury that there were nine paragraphs in the indictment and that "you do not all have to agree on which nine paragraphs that we've proven . . . [y]ou have to agree that it happened on multiple dates, though. . . . we've got to show that it happened on more than one occasion for it to be [felony stalking]." Thus, during voir dire, the State properly explained to the jury that to convict it was necessary to conclude that appellant had committed the prohibited conduct alleged in more than one of the nine paragraphs, but it did not have to agree on which of the nine paragraphs had been proved. *See Johnson v. State*, No. 01-15-00101-CR, 2016 WL 4536954, at *12 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, pet. ref'd) (noting that statements made during voir dire were relevant to egregious harm analysis).

### e. Conclusion Regarding Egregious Error

In light of our analysis of these four factors, and after reviewing the appellate record in its entirety, we cannot say that appellant was actually harmed by the charge error, if any, because the instructions did not affect the basis of appellant's case or his defensive theories, or deprive appellant of a valuable right. *See Arrington v. State*, 451 S.W.3d 834, 839–40 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171.

Accordingly, we hold that appellant was not egregiously harmed by the error, if any, in the charge.

We overrule issues one and two.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists Chief Justice Radack and Justices Goodman and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).