**Opinion issued May 30, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00109-CR

————————————

**JULIAN VILLEGAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1531887**

---

## MEMORANDUM OPINION

A jury convicted Julian Villegas of murder after finding that Villegas intentionally or knowingly caused the death of Anthony Johnson by shooting Johnson with a firearm. *See* TEX. PENAL CODE § 19.02(b). The trial court assessed Villegas's punishment at 45 years' confinement. In four issues, Villegas contends

the trial court made erroneous evidentiary rulings relevant to his self-defense claim and erroneously instructed the jury on his defensive theory. We affirm.

**Background**

After a night of drinking and cocaine use at an after-hours club in Houston, a group of men, some of whom had met for the first time at the club, decided to go to a restaurant for food and additional drinks. Villegas, Anthony Johnson, and Rogelio Martinez were in the group, and all the men appeared to be having a good time. No one acted aggressively. When the group decided to leave the restaurant a few hours later, Martinez waited inside for about four minutes to tip the waitress.

As Martinez exited the restaurant, he observed Villegas standing outside an open passenger-side door of Johnson's Chrysler, which Johnson had driven to the restaurant. Johnson also was standing outside the Chrysler, leaning against Martinez's truck parked in the next space. Martinez explained that, in this posture, Villegas and Johnson were facing one another and did not appear to be arguing. Although he could not see Villegas's hands, Martinez noted that Johnson's hands were empty. As Martinez reached the driver's side door of his truck, he heard the first of four shots ring out and saw Johnson fall to the ground.

Martinez panicked and locked the doors to his truck, as Villegas banged on the rear driver-side window, indicating that he wanted Martinez to let him inside the truck. Martinez denied Villegas entry into the truck but allowed another man, who

2

was with the group and whom Martinez knew was not involved in the shooting, to enter through the passenger door. Martinez drove off, observing Johnson still down on the ground. Martinez felt compelled by a guilty conscience to return to the scene of the shooting a short while later. He dialed 911 en route.[1] When Martinez arrived back at the restaurant, Villegas had fled and Johnson had stopped breathing. Emergency responders were unable to revive Johnson, and Johnson died from his gunshot wounds. A medical examiner later identified six gunshot wounds on Johnson's body, only two of which were from bullets that entered the front side of Johnson's body, and declared Johnson's death a homicide.[2]

Law enforcement officers investigating Johnson's death found a Crown Royal bag, two bank cards, an identification card, and a small plastic bag containing cocaine next to Johnson's body. According to the testimony of one of the investigating officers, the cocaine was packaged in the manner used by drug dealers to make small sales of cocaine; however, no cash was found. Also not at the scene of the shooting was the gun used or any cartridges, bullets, and casings expelled from the gun.

---

[1] Another restaurant patron who was not associated with Martinez's and Villegas's group that night had also called 911.

[2] In the opinion of the State's expert, these injuries were consistent with Johnson being shot from the front, turning away, and then being shot in the back as he fell to the ground.

As the scene was being investigated, Houston Police Department Officer J. Mejia was dispatched to a call for a hit-and-run car accident. Mejia was given a description of the vehicle involved—a Chrysler. Not long after she was dispatched, Mejia and her partner observed a Chrysler with body damage nearby. The driver of the Chrysler attempted to avoid the officers by pulling into a commercial warehouse area. Mejia and her partner followed the Chrysler into the warehouse area, positioning their patrol vehicle so as to block the Chrysler's exit. They then activated their emergency lights and attempted to initiate a traffic stop. The driver, however, refused to comply. When Mejia exited her patrol car and yelled for the driver to exit the Chrysler, the driver ignored her command and nearly struck Mejia as he drove the Chrysler past the patrol car and out of the area. Mejia and her partner pursued but eventually lost track of the Chrysler.

Later that same night, Mejia was called to the scene of another car accident. This time, the Chrysler she earlier pursued had struck a tree, and its driver had fled on foot. Other responding officers had located the driver, later identified as Villegas, at a home nearby and successfully given chase. Mejia observed that Villegas, at times, appeared to be calm, but, at other times, was uncooperative and cursed, spit, and yelled at the officers. She recalled Villegas yelling that he was "Tango Blast." And she perceived he was intoxicated. During his arrest, Villegas informed the

4

arresting officers that he was in possession of a gun and had shot someone who pointed a gun at him because he feared for his life.

The investigation at the scene revealed that the Chrysler Villegas crashed belonged to Johnson. From the Chrysler's front passenger seat, police recovered a semi-automatic pistol, a magazine, and identification cards. A second gun, a gun holster, a digital scale, plastic baggies, and marijuana were also found in the Chrysler.

A grand jury indicted Villegas for murdering Johnson by shooting him with a firearm. Villegas pleaded not guilty, and, at trial, he argued that he acted in self-defense. Villegas's argument centered on characterizing Johnson as the first aggressor. Villegas testified at trial that he was in the group of men who had partied together at the after-hours club and then went together for food and drinks at the restaurant. Like Martinez, Villegas believed that everyone was getting along. He indicated that he had enjoyed getting to know Johnson and used cocaine with Johnson in the restaurant's bathroom.

According to Villegas, he was smoking a cigarette in the restaurant's parking lot, near Martinez's parked truck, when he saw Johnson begin to argue with another man. Villegas believed the argument was drug related. When the other man walked away from Johnson, Johnson became angry, opened the back passenger-side door of his Chrysler, retrieved a gun from a Crown Royal bag located inside a backpack,

5

loaded the gun, "pulled" the gun, and ordered Villegas to move toward him. Villegas stated that, when he hesitated to comply with Johnson's command, Johnson turned the gun toward Martinez. Because he was within arm's length of Johnson, Villegas reached for the gun and attempted to wrestle it away from Johnson. Johnson was shot in the ensuing struggle. By Villegas's count, Johnson shot himself four times and Villegas fired the final two shots as Johnson was falling to the ground. Villegas admitted that he picked up the gun's magazine and the bullet casings from the ground before fleeing the scene in Johnson's Chrysler.

The jury implicitly rejected Villegas's self-defense claim, finding him guilty of murder. Villegas appealed.

## Admission of Evidence

Villegas's first three issues concern the trial court's handling of the evidence. In his first and second issues, Villegas contends the trial court erred in (1) excluding evidence relevant to his claim of self-defense, i.e., evidence that Johnson previously was convicted of a weapons-related offense, and (2) admitting evidence from which the jury could infer that he was affiliated with a gang, i.e., his statement to arresting officers that he was "Tango Blast." We address these complaints in turn.

### A. Standard of review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007); *Jabari*

6

*v. State*, 273 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.). An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Walters*, 247 S.W.3d at 217.

When considering non-constitutional error, even if evidence is erroneously admitted or excluded, we must disregard the error unless it affects a substantial right. *See Potier v. State*, 68 S.W.3d 657, 662–64 (Tex. Crim. App. 2002) (en banc) (observing that erroneous exclusion of evidence "rarely rise[s] to the level of denying the fundamental constitutional rights to present a meaningful defense," and explaining that constitutional rights are implicated only when exclusion of evidence effectively prevents defendant from advancing defensive theory or excluded evidence is critical); *see also* TEX. R. APP. P. 44.2(b) ("Any other [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

An error affects a defendant's substantial rights only when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had only a slight influence on the verdict, the error is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Important factors include the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in

7

connection with other evidence in the case. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "More specifically, the reviewing court should consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert." *Bagheri*, 119 S.W.3d at 763. Evidence of guilt can be a factor in a harm analysis. *See Motilla*, 78 S.W.3d at 356–57.

## B. Error, if any, in the exclusion of testimony about Johnson's prior conviction was not preserved

Villegas claimed self-defense, arguing at trial that the shooting occurred when he was forced to wrestle a firearm away from Johnson. In his first and second issues, Villegas complains that the trial court prevented him from fully developing his self-defense theory by refusing to allow cross-examination of Johnson's wife about Johnson's conviction in 2000 for unlawfully carrying a weapon. According to Villegas, evidence of Johnson's prior weapons-related conviction was admissible under Rules of Evidence 405(a) and 405(b) to show that Johnson was known for carrying a weapon and, thus, was the aggressor. *See* TEX. R. EVID. 405(a) (governing admission of character evidence), 405(b) (stating methods of proving character with specific instances of conduct in cases in which a person's character or trait is essential element of claim, charge, or defense).

To preserve these evidentiary complaints for appellate review, Villegas was required not only to make an offer of proof and obtain a ruling, which he did, but

also to state the grounds for the ruling he desired "with sufficient specificity to make the trial court aware of the complaint." *See* TEX. R. APP. P. 33.1(a)(1); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). "[I]t is not enough to tell the judge that evidence is admissible. The proponent [of the evidence], if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Reyna*, 168 S.W.3d at 177; *see Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) (recognizing that "the party complaining on appeal . . . about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question") (internal quotations omitted).

When asked directly by the trial court why he sought to elicit testimony from Johnson's wife about Johnson's prior conviction, Villegas responded:

> [T]he door was opened by the State asking her questions about had she ever seen him [Johnson] with any weapons . . . and she said no. . . . Leaving the impression with the jury that Mr. Johnson never had any firearms, where he has been convicted, and I think I should be able to ask her hadn't she heard that he's been convicted . . . of unlawfully carrying a weapon.

In other words, he argued that the evidence of Johnson's prior conviction was admissible to correct a false impression created by the State in its direct examination of Johnson's wife. He did not offer either Rule 405(a) or Rule 405(b) as a basis for the admission of the evidence. Because Villegas did not urge that the evidence was

admissible under Rule 405(a) or 405(b), he has waived his complaint about the admissibility of the excluded evidence under those rules. *See Johnson v. State*, 803 S.W.2d 272, 292–93 (Tex. Crim. App. 1990), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991); *see also Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994) (rejecting appellant's argument for admission of evidence on appeal because he "did not clearly articulate" the basis for admission in trial court and, thus, did not afford trial court "the opportunity to rule upon [his] appellate rationale").

Even had Villegas preserved his complaints for our review, the record does not show harm and, as a result, any error in the exclusion of testimony about Johnson's prior conviction would not be reversible. *See* TEX. R. APP. P. 44.2(b). This Court will not overturn a criminal conviction for non-constitutional evidentiary error if, after examining the record as a whole, the Court has fair assurance that the error did not influence the jury, or had but a slight effect. *See Johnson*, 967 S.W.2d at 417. We have that assurance in this case because the State conceded in closing argument that the gun used to shoot Johnson likely belonged to Johnson, not Villegas. Specifically, the State told the jury: "Although the gun wasn't registered to anybody, it doesn't make a lot of sense that [Villegas] brought it there. . . . It is more likely, right, that the gun was in [Johnson's] vehicle[.]" This concession eliminated the need for Villegas to show that Johnson had a reputation for carrying a gun, and thereby

10

rendered any adverse effect from the jury's ignorance of Johnson's prior conviction only slight.

We overrule Villegas's first and second issues.

## C.     Error, if any, in the admission of extraneous conduct was harmless

In his third issue, Villegas argues that the trial court erred in overruling his objection to Officer Mejia's testimony that she recalled Villegas yelling that he was "Tango Blast." According to Villegas, this testimony suggested to the jury that he was affiliated with a gang and, thus, was inadmissible extraneous-offense evidence that served only to inflame the jury. Assuming without deciding that Officer Mejia's testimony referencing "Tango Blast" was inadmissible, we hold that its admission was harmless because it did not affect Villegas's substantial rights. *See Robinson*, 236 S.W.3d at 269.

The record does not explain the meaning of "Tango Blast." Although courts in other cases have been able to look to testimony defining the term as a gang with origins in the prison system, the evidence presented to the jury did not include any such testimony. *See, e.g.*, *Lara v. State*, No. 05-17-00467-CR, 2018 WL 3434547, at *7 (Tex. App.—Dallas July 17, 2018, pet. ref'd) (mem. op., not designated for publication) (summarizing detective's testimony explaining that "Tango Blast" is name of "criminal street gang" that "began as a prison gang"); *Gonzalez v. State*, No. 01-16-00490-CR, 2017 WL 3429428, at *2 (Tex. App.—Houston [1st Dist.]

11

Aug. 10, 2017, no pet.) (summarizing peace officer's testimony that "Tango Blast" is gang known for "thefts, assaults, robberies, home invasions, burglaries, and murders"). As the State points out, Officer Mejia was the only witness to reference "Tango Blast" at trial. No testimony or other evidence provided the jury with any context for identifying "Tango Blast" as a gang or suggested to the jury that Villegas had a gang affiliation. And the State did not emphasize Villegas's statements identifying himself as "Tango Blast" at any point during the trial.

On this record and with due consideration for the evidence of Villegas's guilt—including Martinez's eyewitness testimony about the shooting, Villegas's own testimony acknowledging his role in Johnson's death, the forensic evidence contradicting Villegas's version of events, and the forensic evidence indicating that two bullets recovered from Johnson's body were fired from a handgun like the one recovered from the Chrysler after Villegas's arrest—Officer Mejia's isolated reference to "Tango Blast" could have had only a slight influence on the jury's verdict implicitly rejecting his claim of self-defense. Accordingly, we conclude that any error in the admission of Officer Mejia's testimony is harmless, and we overrule Villegas's third issue. *See* TEX. R. APP. P. 44.1

**Jury Instruction**

In his fourth issue, Villegas argues that the trial court should have submitted a jury instruction under Section 9.32(b)(1)(C) of the Penal Code, which establishes

a presumption of reasonableness for an actor's belief that the use of deadly force is immediately necessary. TEX. PENAL CODE § 9.32(b)(1)(C).

## A. Standard of review

The trial court must give the jury a written charge that sets forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14; *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008). In considering a party's contention that the trial court erred in its charge to the jury, we must determine whether the charge was erroneous and, if so, whether the error was harmful. *Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013). "Not all jury-charge errors require reversal." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (discussing standard for showing harm set out in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)). When, as here, a charge complaint has been preserved, the standard for evaluating harm is whether "the error appearing from the record was calculated to injure the rights of the defendant," which the Texas Court of Criminal Appeals has construed as "some harm." *Celis*, 416 S.W.3d at 423 n.3. This analysis requires a reviewing court to consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

**B.** **Error, if any, in the omission of a jury instruction on the presumption of reasonableness was harmless**

Section 9.32(b)(1)(C) of the Penal Code provides that an actor's belief that deadly force was immediately necessary is presumed to be reasonable if he "knew or had reason to believe that the person against whom the deadly force was used . . . was committing or attempting to commit" aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. TEX. PENAL CODE § 9.32(b)(1)(C). If sufficient evidence exists of the facts giving rise to a statutory presumption favoring the defendant, "the existence of the presumed fact must be submitted to the jury unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." *Id.* § 2.05(b)(1); *see Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011).

Even if the omission of a jury instruction on the presumption of reasonableness was error, we can only reverse the trial court's judgment on this basis if Villegas suffered "some harm" from the error. Considering the charge in its entirety, we note that the trial court properly instructed the jury that Villegas was justified in using deadly force if he reasonably believed that deadly force was immediately necessary to protect himself or a third person against Johnson's use or attempted use of deadly force. The charge further instructed the jury:

> When a person, or third person, is attacked with unlawful deadly force, or he reasonably believes he, or the third person, is under attack or attempted attack with unlawful deadly force, and there is created in the

14

mind of such person a reasonable expectation or fear of death or serious bodily injury to himself or the third person, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself or the third person from such attack or attempted attack.

The charge did not, however, instruct the jury that in certain circumstances it must presume that Villegas had a reasonable belief that deadly force was immediately necessary. This factor generally weighs in favor of actual harm. *See Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (agreeing with intermediate appellate court's conclusion that jury charge weighed in favor of harm because "[n]othing in the charge alerted the jury that it must presume [appellant] had a reasonable belief that the use of deadly force was necessary"); *see also Haye v. State*, No. 01-15-01057-CR, 2017 WL 444462, at *5 (Tex. App.—Houston [1st Dist.] Feb. 2, 2017, pet. ref'd) (mem. op., not designated for publication). If the jury had been provided with a presumption-of-reasonableness instruction, however, the jury reasonably could have concluded that the presumption did not apply given Martinez's testimony that Johnson's hands were empty when the shooting started, which contradicted Villegas's testimony about Johnson as the first aggressor and the two men's struggle over the gun. Thus, although this factor may weigh more heavily in favor of harm in another case, its weight here is minimal. *See Villareal*, 453 S.W.3d at 433 (affording incomplete charge less weight because complete charge would have also permitted the jury to conclude that presumption was inapplicable

15

based on facts of case); *Haye*, 2017 WL 444462, at *5 (concluding that failure to give presumption-of-reasonableness instruction did not weigh heavily in favor of finding harmful error because jury could have concluded presumption did not apply).

With respect to the arguments of counsel, we note that both sides addressed Villegas's self-defense claim in closing argument. The State argued that Villegas's self-defense claim lacked merit because the physical evidence did not support his version of events and that Villegas's testimony on the issue was not credible (especially considering that he may have been intoxicated when the shooting occurred given the drinking and drug use that preceded Johnson's death). Although the State generally contested Villegas's self-defense claim, it did not directly challenge the reasonableness of his professed *belief* that Johnson posed a threat to Villegas or others if the events had transpired as Villegas testified. *See Villareal*, 453 S.W.3d at 441–42 (holding that counsel's arguments did not weigh in favor of finding harm because they did not center on reasonableness of defendant's belief that use of deadly force was immediately necessary). Instead, the State's case focused on whether Johnson was the first aggressor.

Defense counsel urged the jury to believe Villegas's testimony about his struggle to wrest the gun away from Johnson. He told the jurors that anyone who saw "somebody whip out a gun" would be concerned. He argued that a person, including Villegas here, would not be unreasonable to act to prevent harm to himself

or others. Defense counsel also argued that the physical evidence supported Villegas's account of the shooting, including the evidence that police recovered the Crown Royal bag from which Villegas testified Johnson pulled the gun. According to defense counsel, "little bitty things like that" added up to show the credibility of Villegas's testimony. Considering that the arguments of counsel included discussion of Villegas's decision to use deadly force, we conclude this factor weighs in favor of finding actual harm.

But any harm that can be gleaned from the arguments of counsel is outweighed by the strength of the evidence against Villegas. *See Johnson v. State*, 981 S.W.2d 759, 763 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (observing that "state of the evidence . . . is the most important factor in the analysis"). "When the evidence is overwhelming, it is obviously less likely the jury was influenced by an erroneous jury instruction than by the weight of the probative evidence itself." *Id.*

Our review of the entirety of the evidence leads us to conclude that the jury reasonably could have rejected Villegas's claim of self-defense. Martinez's eyewitness account supported a conclusion that Villegas, not Johnson, reached for the gun inside the Chrysler. According to Martinez, Johnson was leaning against Martinez's truck and was not holding a weapon. The physical evidence likewise undermined Villegas's self-defense claim, including the number of shots to Johnson's back. And Villegas acknowledged the shooting, as well as the drinking

and drug use that preceded it and his attempts to dispose of any evidence against him and to evade arrest.

After considering the relevant factors, we conclude that Villegas did not suffer any actual, as opposed to theoretical, harm as a result of any alleged error in the omission of a presumption-of-reasonableness jury instruction. *See Reeves*, 420 S.W.3d at 816 (citing *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)). Accordingly, we overrule Villegas's fourth issue.

## Conclusion

Having overruled all Villegas's issues, we affirm the trial court's judgment of conviction.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).